MISSISSIPPI STATE BOARD OF DENTAL EXAMINERS *et al. v.*
MANDELL.

(In Banc. March 12, 1945.)

[21 So. (2d) 405. No. 35806.]

John J. Burkett, of Jackson, and Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellants.

Barnett, Barnett, Jones & Stone, of Jackson, **Bidwell Adam**, of Gulfport, and **Mandell & Wright**, of Houston, Texas, for appellee.

56

Argued orally by **John G. Burkett,** for appellants, and by **Ross R. Barnett** and **Arthur J. Mandell,** for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Approximately forty-three years ago, there was born in Barlad, Roumania, a son to a Jewish family, who was given the name Ianko Moishe Mendell by orthodox Jewish rites. He entered the schools of his native country where he received a high school education in the Lyceum Codreneau in Barlad. He also attended college at Bucharest, Roumania. He grew to manhood in Roumania, but early formed dreams of a career in free America where he had a brother living in Florida. He had heard of John Hopkins University, and had written to the University officials from Roumania. When he was approximately twenty years of age, his parents emigrated from Roumania to America, landing in the East but ultimately removing to Florida to be with their son who was living there. The young man referred to here is the appellee in the case before the Court, and on reaching Florida, he worked for awhile in his brother's store. Subsequently, his parents died and he received a small inheritance from his mother.

Apparently, through all of this period, he still cherished the ambition to study at Johns Hopkins, and after his mother's death, appellee went to Baltimore and applied for admission to the University and was accepted on the scholarship credits from Roumania. On the faculty of the University was a professor from Roumania, and on his examination of the accrediting papers of appellee, he was given advanced standing and designated a special stu-.

dent.   At Johns Hopkins University, each student is given a faculty adviser, and in a conversation between appellee and his adviser, the matter of his name came under discussion.   Appellee told his adviser he used to be called "Jack" but that his first name in Roumanian was "Janku," which was the Roumanian version of "James." The adviser told him that "Jack" was a nickname and "James" would be more appropriate, and on the advice of this faculty member he was enrolled as James Mendell at Johns Hopkins.

Appellee also applied for his first citizenship papers in furtherance of his purpose to become a naturalized American citizen, which citizenship papers were signed as follows: "Janku Mendel (James Mandell)."   The Roumanian pronunciation of the name "Mendell" has the sound of "Mandell" in English, according to the undisputed testimony, because of the way the Roumanian "E" is sounded in English.   For that reason, appellee began to spell his name "Mandell" instead of "Mendell."   The English equivalent or counterpart of appellee's Roumanian name "Ianko Moishe Mendell" is "James Maurice Mandell."   It is a common occurrence for emigrants to this country from European countries, having names that are difficult of pronunciation by the American tongue, to change the names to American counterparts or equivalents for convenience and facility in pronunciation and recollection of the name by their new American fellow citizens.   This appears from the record to have been the reason why appellee became known as "James Maurice Mandell."   There is no ulterior or sinister motive shown, and appellant offers no evidence in opposition to that of appellee, to show another motive than appellee's explanation.

In addition to pursuing his education at Johns Hopkins University, he also attended the University of Maryland, the University of Texas, the University of Missouri, and the Kansas City Western Dental College.   He eventually graduated in dentistry from the last-named institution,

and at the time of the start of these strange, eventful scenes in this record, appellee was a resident of New Orleans, Louisiana, where he was a close friend of an old and established dentist, Dr. Gentry, who had taken an interest in and favored him from time to time. He conceived the idea of locating in the State of Mississippi for the practice of dentistry and took up with the proper authorities in Mississippi the matter of application for admission to the right to practice dentistry in this state. He was sent an application, copied in the record, and a facsimile of which was presented to us in connection with the briefs and arguments in this case. This application was on the form prescribed and required by the State Board of Dental Examiners, and inasmuch as it forms the basis of the proceedings which are being considered by us on this appeal, we deem it necessary to copy it here:

"Application for Examination for License to Practice Dentistry in Mississippi.

"Please Answer The Following Questions:

" 1. Where were you born and reared? Born in Barlad, Rumania, and reared in U. S.
2. Date of birth? 8/30/1900 Present residence? 932 Camp Street, New Orleans, La.
3. Place of residence during past five years? Kansas City, Missouri.
4. Years spent in professional training? Four years.
5. What school, academy or college did you attend, and how long, before entering upon the study of Dentistry? Attended two years at Johns Hopkins University Undergraduate School.
6. Number of courses of lectures taken? Ten.
7. Graduate of what dental college? Kansas City Western Dental College, Kansas City, Mo.
8. Date of your graduation? June, 1939.
9. How long have you practiced Dentistry? None.
10. Have you ever done any advertising? Never.

11. Do you intend to adhere to ethical standards of dental practice as long as you practice in this State? Yes.
12. Where do you intend to locate? Columbus, Mississippi.

"To the Mississippi State Board of Dental Examiners:

"I hereby make application for an examination for license to practice dentistry under the laws of the State of Mississippi, and submit the names of the following citizens of the State of Mississippi, certifying to the fact that I am of good moral character, and that I possess an education equal to that of a high school graduate.

"Name   (Signed)  James Maurice Mandell
"Street Address   9321 Camp Street
"City, Town or Village   New Orleans, La.
"State                        Louisiana
                   "Testimonials as to Character
"Name     Mr. George Schilling
"Address  Bay St. Louis, Mississippi
"Name     Capt. Lamar C. Smith, DDS
"Address  Whitfield, Mississippi.".

The photograph of the applicant was attached to this application as an inset. On this application, a license to practice dentistry in Mississippi was granted, and the appellee opened an office in the City of Jackson for the practice of his profession.

Under date of January 17, 1944, complaint was made to the State Board of Dental Examiners by the Central Mississippi Dental Association against appellee of certain matters, on the premises of which it was sought to have his license as a dentist cancelled pursuant to the provisions of Section 4322, Code of 1930, now Section 8774, Code of 1942. This section provides that any accusation may be filed charging any licensed dentist with any of the

offenses enumerated in Section 4321, Code of 1930, now Section 8773, Code of 1942, among which are: "1. Misrepresentation in obtaining a license, or a wilful violation of any of the provisions of Chapter 104 of the Mississippi Code of 1930, and amendments thereto (this chapter) . . .''; and "4. . . . (c) Practicing dentistry or dental hygiene under a false or assumed named." The charges presented against appellee were that he wilfully, unlawfully and knowingly misrepresented to the State Board of Dental Examiners certain facts known by him to be false and stated by him for the purpose of misleading the board, and for the purpose of procuring said license fraudulently, which would not have been granted except for such misrepresentations. On conviction, the license of the offending dentist is subject to revocation of suspension. In this case, it was revoked by the board.

The charges may be summarized as follows:

1. That he answered the question "Where were you born and reared?" by stating "Born in Barlad, Roumania and reared in U. S.," and that the part of the answer "reared in U. S." was false in that appellee came to the United States after he was twenty years of age and was not therefore reared in the United States as he represented, and he had not become a naturalized citizen.

2. Appellee is charged with answering falsely also the following question: "What school, academy or college did you attend and how long before entering upon the study of dentistry." To this question his answer was "Attended two years at Johns Hopkins University Undergraduate School." Which answer, it is alleged, was false in that he never attended such university *under the name of James Maurice Mandell* (Italics ours.)

3. That he answered falsely this question: "Number of courses or lectures taken" by stating "Ten," it being alleged that said answer was untrue in that he never attended said university *under the name of James Maurice Mandell.* (Italics ours.)

4. It was further alleged that in preparing and submitting his application, he signed the names of Mr. George Schilling of Bay St. Louis, Mississippi, and Capt. Lamar C. Smith, DDS, Whitfield, Mississippi, to a certificate, certifying to the fact that he was of good moral character and possessed education equal to that of a high school graduate, when in truth neither of these gentlemen knew appellee and did not authorize the signature of their names to any such certificate or anything else in connection with the application of appellee to practice dentistry, and that appellee did not in fact possess the equal of a high school education. These names are written on the application beneath the place for the signature of the applicant and his post office address, which at the time was New Orleans, Louisiana. Below the signature of the applicant to the application and his post office address and under this caption "Testimonials as to Character", are two spaces for listing the names of two references, as follows: "Name Mr. George Schilling Address Bay St. Louis, Mississippi Name Capt. Lamar C. Smith, DDS Address Whitfield, Mississippi," where it is alleged appellee with the typewriter signed the names of two Mississippians to a certificate, referring to an insert in the application. It is a document difficult of interpretation.

5. Appellee was further accused in said charges of practicing dentistry in the State of Mississippi under an assumed name.

The case was set for trial, after notice to appellee, before the State Board of Dental Examiners, where the matter was heard on proof, including that of appellee, both sides being represented by counsel, and where appellee received courteous, patient and even sympathetic consideration, but the judgment of the board sustained the charges and cancelled his license to practice dentistry. Whereupon, appellee appealed to the chancery court in accordance with Section 4323, Code of 1930, which is Section 8775, Code of 1942, which statute provides, among

other things, the following: "The right to appeal from the action of the board in revoking the license of any dentist or dental hygienist is hereby granted. Such appeal shall be to the chancery court of the county in which such dentist is practicing, and must be taken within thirty days after notice of the action of the board in revoking such license." This case was heard by the Chancery Court of Hinds County on appeal, and at the conclusion of this hearing, the order of the State Board of Dental Examiners revoking the license of appellee was annulled, cancelled, set aside and held for naught and of no effect by the court, and appellee restored his legal right to continue to practice dentistry under the license originally issued to him in the State of Mississippi. From this decree of the chancery court, appeal was prosecuted to this Court.

We think the proof insufficient to sustain the finding of the State Board of Dental Examiners that appellee wilfully, unlawfully and knowingly misrepresented to the State Board of Dental Examiners the matters set out in the complaint against him for the purpose of misleading the board and fraudulently procuring a license to practice dentistry in Mississippi, and that appellee was practicing dentistry in Mississippi under an assumed named. This statute does not seem to have been construed by us in any similar proceeding, but in State ex rel. Jordan v. Pattishall et al., 99 Fla. 296, 126 So. 147, such statutes as are being considered by us in this connection are held to be penal in their nature and to be strictly construed; and the California Court of Appeals has held that a proceeding under such statutes for the revocation of a license to practice dentistry are in the nature of a criminal trial in which all intendments are in favor of the accused. Messner v. Board of Dental Examiners of California et al., 87 Cal. App. 199, 262 P. 58. The language of this complaint, the charging part of the complaint against appellee is that he "wilfully, unlawfully and knowingly" misrepresented to the Board of Dental Examiners the facts listed. It is a

serious matter to cancel the license to practice one of the learned professions which is the culmination of a long preceding course of study. Indeed, it is a serious matter to deprive anybody of a right to pursue the calling for which he is trained, whether a trade or a profession, because it involves denying to such person a property right by taking away the privilege of following his chosen occupation for a livelihood. It then becomes important to examine some of the holdings of courts from other states since we have no adjudication in Mississippi. Misrepresentation "to Board of Dental Examiners" necessarily involves moral delinquency,—guilty knowledge, and intent to deceive. Mason v. Moore et al., 73 Ohio St. 275, 76 N. E. 932, 4 L. R. A. (N. S.) 597, 4 Ann. Cas. 240. In penal statutes, the word "wilful" generally means with a bad purpose, an evil purpose, without ground for believing the act to be lawful; Roby et al. v. Newton, 121 Ga. 679, 49 S. E. 694, 68 L. R. A. 601; and indicates a bad or corrupt purpose; State v. Wilson, 108 Kan. 641, 196 P. 758, but if the act charged to be wilful merely reflects thoughtlessness and exhibits only an error of judgment, with no bad or evil purpose, it does not constitute wilfulness. Shields v. State, 184 Okl. 618, 89 P. (2d) 756.

Appellant contends that the answer of appellee to the question in his application for license that he was reared in the United States, when as a matter of fact he did not reach this country until approximately his twentieth or twenty-first year, was a wilful, unlawful and knowing misrepresentation, intended to mislead and designed to procure a license to practice dentistry fraudulently. It will be remembered that appellee was an immigrant here, that the niceties of the English language were not as familiar to him as to citizens who have spent their lives in this country, and he stated that by "reared in the United States" he had in mind he was informing the board that he was educated in the United States. One of the meanings to the word "reared" given by Webster's New International Dictionary is "To bring up to maturity, as

young; to foster; educate; instruct; as, to rear offspring.''
It will be seen, therefore, that the answer of appellee to
this question was not false at all, laying aside the fact that
his answer refuted, even if mistaken, the charge of wil-
fulness, knowledge and fraudulency.

It will be noted further that appellant does not charge
outright that appellee did not attend two years at Johns
Hopkins University Undergraduate School before enter-
ing upon the study of dentistry as he represented he did
in his application, but says that ''said answer was false
and untrue, he having never attended said undergraduate
school of said university *under the name of James Maurice
Mandell.*'' (Italics ours.) A man's name is not the man.
As Robert Burns said ''A Man's a Man for a' that.'' It
has been set out, supra, how it happened that he was en-
rolled as James Mandell at Johns Hopkins University,
and the record reflects beyond any doubt that he did
actually attend Johns Hopkins University for the length
of time he says he did in the application. The test is
whether he attended the University in fact and not under
what name, and having actually attended the University
as he represented, there could not be any misrepre-
sentation, and certainly no wilful and fraudulent mis-
representation, and certainly no wilful and fraudulent
misrepresentation in a statement which manifestly was
true.

The same obstacle obstructs the ability of appellant to
sustain the charge that appellee misrepresented the num-
ber of courses of lectures taken when he stated ''ten,''
in that appellant does not charge that appellee actually
had not taken the courses but that he did not take them
*under the name of James Maurice Mandell.* (Italics ours.)
The proof is overwhelming that he took the courses and
his explanation as to why he used the English or Ameri-
can counterpart of his Roumanian name is reasonable, and
the proof shows this usage is generally customary among
immigrants from certain European countries upon their
arrival in this country.

What has been said here with reference to the name of the appellee applies also to the charge that appellee was practicing dentistry in Mississippi under an assumed name. It seems to be the idea of appellant that appellee has assumed a false name, a name not his own, because it is not his original Roumanian name of Ianku Moishe Mendell, but its English or American counterpart, James Maurice Mandell. Appellant seems to think that the only way a man can legally have a different name than his baptismal name is by formal legal proceedings of some sort, and that a change in the form of a name would make it a fictitious or an assumed name, an alias. This is not the law. The name by which a person is generally known, although not his original name, but used by him in all of his business affairs becomes his legal name and is not a fictitious name. Ray v. American Photo Player Company, 46 Cal. App. 311, 189 P. 130. Authors use a nom de plume; warriors use a nom de guerre; and eminent rulers and statesmen frequently travel under a different name than their own or incognito. All of this is legitimate although literally the names are "assumed." Before the words "assumed name" can import the sinister implication sought to be given them by appellant in this case, there must be some sinister purpose in using the alleged changed name, such as falsely pretending to be some other person and thereby fraudulently obtaining some unlawful objective, or changing one's name to an alias, as a fugitive from justice, or seeking to conceal one's identity in order to escape obligations to one's family or creditors. In this statute, the legislature may have sought to prevent a dentist losing his license in another state because of dereliction, assuming a false name and securing a license in Mississippi fraudulently. There is no intimation of any of such purposes made against appellee in this case. There is no reason shown in the record that he could or would gain anything by the use of an assumed name, but on the contrary the only reflection in the record on the subject is that it is not an assumed name

but a counterpart in English of the Roumanian name. Generally, there is no implication of deceit in the dropping of one of two given names. Some Presidents of the United States have done it, for instance, Grover Cleveland, Calvin Coolidge and others. Nor in later resuming the full name. This charge against appellee is not sustained, in our judgment.

The charge that appellee forged by a typewritten signature the names of Mr. George Schilling and Capt. Lamar C. Smith, DDS, to a certificate in connection with his application for license and that he did so "wilfully, unlawfully and knowingly" as a misrepresentation for the purpose of misleading the board and procuring a license fraudulently is not sustained by the proof. This young immigrant from Roumania, at the time residing in New Orleans, and after having studied through the years to become a dentist, went to a reputable dentist and an estimable gentleman in the City of New Orleans, who had had twenty years experience as a dentist, as young men will go to older members of a profession which they hope to follow, for advice and counsel, and in a conversation between him and the older dentist, the difficulty confronting appellee of not knowing anybody in Mississippi to certify as to his character and high school qualifications was discussed, and the older dentist suggested to the younger man that he knew two very fine men in Mississippi who were his long-time friends, who, on his recommendation and request, would be glad to sign this certificate, and that he would write them so requesting that they do. In this, appellee was corroborated by a later letter from the older dentist to one of these references, in the evidence in the record. Thereupon, the application was completed by, as appellee thought, giving the names of these two gentlemen as references. A mere inspection of the application form used, in our judgment, justified his inference that was the purpose of putting the two names outside of and below the application completed by his signature. Certainly, in our judgment, the contention

that he forged the signatures of these gentlemen, or represented to the board that the typewritten names in the blank spaces were their signatures is not supported in reason. No inquiry of them was made by the board, nor did they file any certificates, nor did appellee offer any certificates from them, unless the middle of the application be construed to be a form of certificate, a difficult matter due to its obscurity and ambiguity. It is not exactly clear whether the New Orleans dentist overlooked writing these gentlemen or they failed to get such letters. However, the explanation given of this transaction by appellee is reasonable and is not contradicted in the record, and the facts failed to sustain the charge on this count in our opinion. Appellee could have furnished, perhaps easily, two references from Louisiana, where he resided, as directed by Section 4303, Code 1930, now Section 8755, Code 1942, but the application form furnished him by the board required them to be citizens of Mississippi.

The chancery court held with reference to this charge against appellee: ''The court finds from the evidence that the form·of the application, as submitted by the Board, may properly have been construed that the respondent was required to submit two references as to his character. Furthermore, the specific charge against respondent contained in Charge No. 4 is bottomed upon the contention that 'the signatures of two citizens of the State of Mississippi were submitted on the application, and that in truth and in fact they were not the signatures of the persons named in said application.' The court finds that the application introduced in evidence shows without dispute that respondent did not submit any signatures of any person, but rather submitted the names of two citizens which had the effect of being references for the Board's information if it desired it. The court further finds from the evidence that reputable citizens and dentists did submit, at the hearing before the board on April 26, 1944, written certificates over their signatures certifying to the fact that respondent was at the time of making the ap-

plication, and is at this time, a person of good moral character and did possess a high school education, and that the board was not misled in this particular.''

The proof is also uncontradicted that appellee did have more than the equivalent of a high school education, which indeed he was required to have before he could qualify to matriculate in Johns Hopkins University. The proof is that he finished in the Lyceum Codreneau, a high school, and attended for a while a college in Roumania before coming to this country.

At the hearing of this cause before the Board of Dental Examiners on the trial for cancellation of appellee's license, reputable citizens and dentists submitted written certificates over their signatures, certifying to the fact that appellee was at the time of making application and at the time of the hearing a person of good moral character and possessed a high school education, as stated, supra. There was no contradiction of these testimonials of appellee's high character, qualifications and educational attainments. There was no ulterior, dishonest or corrupt purpose shown against appellee in using the American counterpart of his Roumanian name, although he was charged with wilfully, knowingly and unlawfully misrepresenting the fact to the board for the purpose of misleading the board and procuring the license fraudulently. There was no proof to sustain this charge or the other charges made with the same allegedly similar motives and purposes. So the chancery court rightly reversed the action of the State Board of Dental Examiners and reinstated appellee's license to practice dentistry in the State of Mississippi, in our judgment, and the decree of the chancery court is affirmed.

Affirmed.