204 So.2d 278 (1967)
MISSISSIPPI INSURANCE COMMISSION
v.
James M. SAVERY.
No. 44540.
Supreme Court of Mississippi.
October 30, 1967.
Suggestion of Error Overruled December 11, 1967.
*279 Maurice R. Black, Jackson, for appellant.
Watkins & Eager, Jackson, Lumpkin, Holland & Ray, Tupelo, for appellee.
RODGERS, Justice:
A charge was filed against James M. Savery, appellee, an insurance agent, with the Insurance Commissioner of this state, alleging that appellee violated sections 5830 and 5834-11, Mississippi Code 1942 Annotated (1956). Notice was given to the appellee, and a hearing was had before the Commission. At the conclusion of the proceedings, the Commission entered an order holding:
"(T)hat said J.M. Savery wilfully and knowingly charged and received premiums for insuring property against loss or damage by fire or lightning which deviated from and did not conform to the rates approved and promulgated by the Mississippi State Rating Bureau, in violation of Section 5830 of the Mississippi Code of 1942, Recompiled and Amended.
"Wherefore, premises considered, it is ordered and adjudged that the agent's license of said J.M. Savery be, and same is nearby revoked, as of this date."
J.M. Savery appealed to the Circuit Court of the First Judicial District of Hinds County, Mississippi. The court reversed the order of the Commission, upon the ground that there was no substantial evidence in the record to sustain the order of the Commission. The Commission has appealed to this Court, and now contends that the circuit court erred in its holding.
The charge against the appellee, James M. Savery, arose under the following circumstances. *280 Mr. Savery (hereinafter called "Agent") is the owner of an insurance agency located at Tupelo, Mississippi. The agency was established by appellee's grandfather in 1869, and appellee succeeded his father as agent in 1920. Mr. Savery was a member of the board of directors of Tombigbee Electric Power Association for many years, and his agency handled the fire and casualty insurance for the Tombigbee Electric Power Association (hereinafter called "Power Association"). The Power Association had buildings and equipment located in Tupelo and in Fulton, Mississippi, and the Agent wrote several insurance policies covering fire and casualty risks on the property of the Power Association.
In the early part of 1963, the exact time is not clear, the Power Association moved to a new office building. This building was attached to another building. A third building was moved to this property later. All of this was enclosed with a cyclone fence. The three buildings, the office building, the warehouse building and the small tin building, contained equipment and fixtures belonging to the Power Association. One of the major contentions in this case is that a policy written in 1963 for $350,000 was erroneous. This policy attempted to cover the three buildings, the stock of wire, transformers, poles and other property in addition to the buildings. The location of this property had not been established for rating purposes. In fact, no water pipe or fire protection was near the property at the time the policy was written.
The Agent contends that he attempted to give the new property a "tentative" rate because it had not been rated by the rating bureau. When this information reached the Insurance Commissioner's office, the Insurance Commissioner held this matter in abeyance. A letter from the Commissioner to the Agent said, "not rating, listing for inspection." Later the Commissioner wrote, "Please endorse showing occupancy of the buildings to enable us to check." The Commissioner then rated the property as one building situated at 2880 Highway 45 South, Tupelo, Mississippi. At this point the witness for the insurance company was asked the following question:
"Q. Mr. Rankin, you've already told me, I think, that when the original policy came in the agent had showed plural `Buildings' and it was intended to cover not only the contents of those buildings, but the contents of the grounds in and around those buildings, which you recognized as an effort to write blanket coverage, didn't you?
"A. I do. But our auditors, I'm afraid, wouldn't be that sharp on it."
The insurance policies written to cover the property belonging to the Power Association at Fulton were erroneous as to the rate charge, but the Agent explained this discrepancy by saying:
"Yes, sir. On the Fulton property, we didn't have it located properly, and I doubt if they have yet because we don't have a Fulton map and we don't have a Fulton rate book. But we took the rates that we thought would be okay on it. It was high, and they criticized it, and we endorsed it to answer the criticism to satisfy the criticism and gave them credit for return premiums on, oh, four or five policies, maybe more, on that particular piece of property."
The testimony, however, shows that the Agent immediately endorsed all of the policies showing the new rates as required by the Insurance Commissioner, and mailed copies to the Insurance Commissioner and the insuror. The Power Association contended, however, and it is admitted by the Agent, that he did not, at first, mail endorsements on three of the policies to the Power Association. When being questioned with reference to these policies, he said:
"It was the three of these policies on buildings, $350,000 blanket and $50,000 on contents  or stock blanket, and $20,000 on fixtures blanket."
*281 He then testified as follows:
"Q. But you did not send it to the insured, the party concerned?
"A. Not that day. I told you we delayed that until, oh, some time in December.
"* * *
"Q. '63. You sent those policies in December, according to the letter which 
"* * *
"A. Yes, sir, we sent endorsements to the Tombigbee in I think December of 1963."
The Agent also mailed a letter to Mr. Louis Cook, superintendent of the Power Association, informing him of the reduced premiums, amounting to several thousand dollars, and stated that credit was given the Power Association on the books of the agency against the amount due to the agency by the Power Association.
Mr. A.N. Lann, the office manager and assistant secretary of the Power Association, denied that he received the endorsements. He appeared before a meeting of the board of directors of the Power Association and demanded that it be paid the refund premiums in cash rather than by credit memorandum against the amount due the Agent. A committee was appointed by the board to examine the claim. The committee recommended payment of $3,091.25. The Agent mailed a check for this sum to the Power Association. The Tennessee Valley Authority, the parent association, did not agree with this figure, and the Agent then paid an additional sum of $1400, making a grand total of approximately $4,500.
When all this testimony is carefully sifted, it is apparent that the only disagreement shown by the evidence is whether or not the Agent mailed the endorsement to the Power Association showing that the excess premium had been credited to the amount due by the Power Association to the Agent. In short, Mr. Lann, the office manager for the Power Association, said he did not receive the endorsement. Is this evidence, then, substantial enough to find the Agent guilty of "wilfully" violating the provisions of section 5830, Mississippi Code 1942 Annotated (1956)? After examining this Code section we are of the opinion that this evidence is not sufficient to support an order finding the agent guilty within the meaning of this section of the Code.
Mississippi Code 1942 Annotated section 5830 (1956) is in the following language:
"Any violation of the provisions of this section by any stock fire insurance company or by the rating bureau or by any officer or agent of either, shall be a misdemeanor, and, on conviction, be punished by a fine of not less than $25.00, nor more than $200.00 for each offense, and if such fine is not paid within thirty days after conviction, the license of such stock fire insurance company or its agents, so offending, may be suspended or revoked until the said fine shall be paid; provided, that any offense under this section shall not be cumulative both as to the company and its agents. If any such stock fire insurance company knowingly or wilfully charges or receives any premium or premiums for insuring property against loss or damage by fire or lightning, which deviates from or does not conform to the rates approved and promulgated by the rating bureau, or uniform deviation therefrom made under § 5313 (Code of 1930; § 5827, Code of 1942), or if such company wilfully violates any of the provisions of this section, the insurance commission, after notice to the party so offending, and after opportunity to be heard, shall suspend or revoke the license of such company or any offending agent so found guilty, and in addition any party aggrieved, or the state on relation of the attorney-general, may sue for and recover a penalty not in excess of $200.00."
*282 It is apparent that the first part of this section expressly states that the violation of this section "shall be a misdemeanor." After setting forth the fine upon conviction, it states that when the fine is not paid within thirty days, the license of the offending company or its agent may be suspended or revoked until the fine is paid. This part of section 5830 clearly requires the conviction in a criminal court before the Insurance Commission is authorized to act.
The second part of this section provides that an insurance company or its agent who does not conform to the rates promulgated by the Commission, or if the insurance company "wilfully" violates any provisions of section 5830, "the insurance commission, after notice * * * and after opportunity to be heard, shall suspend or revoke the license of such company or any offending agent so found guilty". Under the third part, the state may bring suit for a penalty of $200.
Although section 5830 is divided into three parts, it is in its entirety a penal statute and must be construed accordingly. In Mississippi State Board of Dental Examiners v. Mandell, 198 Miss. 49, 65, 21 So.2d 405, 409 (1945), it was held that section 8774 of Mississippi Code Annotated (1956), which authorizes the revocation of dentistry licenses, is penal in nature. There this Court said:
"Indeed, it is a serious matter to deprive anybody of a right to pursue the calling for which he is trained, whether a trade or a profession, because it involves denying to such person a property right by taking away the privilege of following his chosen occupation for a livelihood."
It was further held that a proceeding under that statute was in the nature of a criminal trial in which all intendments are in favor of the accused.
Statutes imposing penalties must be strictly construed. Kelley v. Welborn, 217 Miss. 16, 63 So.2d 413 (1953); Harris v. State, 179 Miss. 38, 175 So. 342 (1937). The textwriter in 44 C.J.S. Insurance § 86 (1945) has this to say on this subject:
"Statutes imposing penalties must be strictly construed, and every fact necessary to constitute the offense for which the recovery of the penalty is sought must be clearly proved; no intendments will be allowed in favor of the party for whose benefit the suit is brought."
Also see 16 Appleman, Insurance Law and Practice § 8636 (1944).
The meaning of section 5830 is apparent. Evidence which does not show an intent to violate the statute is not sufficient to sustain a charge under this Code section. "Wilful" is a word denoting an act done consciously and intentionally, or knowingly and purposely, without justification or excuse. The word as ordinarily used in courts of law denotes some element of design, intention or deliberation and intention to do or refrain from doing some act, and not mere inadvertence. Dorroh v. State, 229 Miss. 315, 90 So.2d 653 (1956), citing 94 C.J.S. Willful at 620, 624 (1956).
In Mississippi State Board of Dental Examiners v. Mandell, supra, it was said with respect to the "wilful" commission of certain acts as grounds for revocation of a license to practice dentistry:
"In penal statutes, the word `wilful' generally means with a bad purpose, an evil purpose, without ground for believing the act to be lawful; Roby et al. v. Newton, 121 Ga. 679, 49 S.E. 694, 68 L.R.A. 601; and indicates a bad or corrupt purpose; State ex rel. Hopkins v. Wilson, 108 Kan. 641, 196 P. 758, but if the act charged to be wilful merely reflects thoughtlessness and exhibits only an error of judgment, with no bad or evil purpose, it does not constitute wilfulness. Shields v. State, 184 Okl. 618, 89 P.2d 756." (198 Miss. at 65, 21 So.2d at 409)
*283 There is nothing unusual and certainly nothing criminal or fraudulent about overcharging premiums. This sort of mistake is made almost daily by every insurance agent in the state, particularly where no insurance rate has been promulgated by the Insurance Rating Bureau. It is always corrected by memorandum from the office of the Insurance Commissioner. These memoranda are called "criticism." The fault rises when the agent "knowingly or wilfully charges or receives any premium or * * * premiums which deviates from or does not conform to the rates approved and promulgated by the rating bureau * * *."
We agree with the argument of the Mississippi Insurance Commission that ordinarily this Court will not reverse a finding of an administrative agency where it has substantial evidence on which to base its finding; nevertheless, where the administrative agency is limited by the statute to determine an issue, penal in nature, requiring proof of "wilful" violation of that statute, the evidence of wilfulness must be clear and convincing. The Insurance Commission has power while acting quasi-judicially to suspend or revoke licenses, and this power carries with it a reasonable discretion, but this discretion must be exercised as outlined in and as authorized by the particular statute involved. It must not act unreasonably, capriciously nor arbitrarily. If the administrative agency fails to act within the clear intent of the statute, or acts arbitrarily or capriciously, this Court must reverse. Central Elec. Power Ass'n v. Hicks, 236 Miss. 378, 110 So.2d 351, 112 So.2d 230 (1959); 2 Am.Jur.2d Administrative Law § 620 (1962).
We are of the opinion that the testimony in this case does not clearly show that the Agent, James M. Savery, knowingly or wilfully violated the provisions of section 5830, Mississippi Code 1942 Annotated (1956), and for this reason the judgment of the circuit court should be affirmed.
The judgment of the circuit court reversing the order of the Insurance Commission will be affirmed, and the order of the Insurance Commission revoking the insurance agent's license of James M. Savery is hereby set aside.
Affirmed.
ETHRIDGE, C.J., and BRADY, PATTERSON and SMITH, JJ., concur.