500 So.2d 958 (1986)
Jessica HARRIS
v.
MISSISSIPPI REAL ESTATE COMMISSION and J. Daniel Schroeder, Administrator.
No. 55730.
Supreme Court of Mississippi.
October 29, 1986.
Rehearing Denied February 4, 1987.
*959 Tim C. Holleman, Boyce Holleman, Gulfport, for appellant.
M. Marcia Smalley, John L. Maxey, II, Cupit & Maxey, Jackson, for appellees.
Before HAWKINS, P.J., and DAN M. LEE and ANDERSON, JJ.
DAN M. LEE, Justice, for the Court:

STATEMENT OF THE CASE
Jessica M. Harris appeals the revocation of her real estate broker's license by the Mississippi Real Estate Commission and the dismissal of her subsequent appeal by the Circuit Court of the First Judicial District of Harrison County.
The Real Estate Commission based its action on a complaint leveled against Ms. Harris, Sheleese Realty Co., for which Ms. Harris was employing broker, and Parry V. Donaldson, a real estate salesman who was in Ms. Harris' employ. The Commission conducted a hearing February 18, 1981, on charges that Ms. Harris demonstrated bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing in violation of Miss. Code Ann. § 73-35-21(m) and that she violated Rule 6 of the Mississippi Real Estate Commission Rules and Regulations by failing to adequately instruct or supervise her salespersons.
The Commission by order dated February 23, 1981, concluded in its findings of fact and conclusions that Ms. Harris had indeed violated the provisions and ordered that her license and the license of Sheleese Realty be revoked. Ms. Harris appealed the revocation of her license as provided by Miss. Code Ann. § 73-35-25. On December 18, 1982, the circuit court dismissed the petition, finding the appeal to be without merit after reviewing the record and briefs of counsel. The circuit court ordered that Ms. Harris' appeal to this Court would be with supersedeas upon making a $1,500 bond. Ms. Harris posted bond and appeals to this Court assigning the following errors:

*960 1. The Mississippi Real Estate Commission erred in finding that the Appellant was guilty of violating § 73-35-21(M), Mississippi Code of 1972, revoking Appellant's real estate broker's license, such finding being arbitrary, capricious, unreasonable, and an abuse of discretion and not supported by substantial evidence.
2. The Mississippi Real Estate Commission erred in finding that the Appellant was guilty of violating § 73-35-21(M), Mississippi Code of 1972, in that the Appellant was denied due process of law, as required under the 14th and 15th Amendments of the United States Constitution, the Constitution of the State of Mississippi and § 73-35-23, Mississippi Code of 1972, Annotated, such finding being a denial of the fundamental principles of justice and fair play long known to the law.
3. The Mississippi Real Estate Commission erred in finding that the Appellant was guilty of violating § 73-25-21(M), Mississippi Code of 1972, revoking Appellant's real estate broker's license, based on the unverified complaint of Eloise Burnside.
There being substantial evidence to support the Commission's findings, we accordingly affirm.

STATEMENT OF THE FACTS
Jessica Harris ran Ebony Realty Co. in Gulfport. In early October, 1980, she met with Kay Street to talk about using Ms. Harris' real estate broker's license to open a branch office at a realty company Kay Street owned in Ocean Springs. The company could no longer be run by Kay Street because her broker's license had recently been revoked.
Ms. Harris testified before the Commission that she learned through the friend of one of her employees at Ebony that some workers at Kay Street Realty Co. needed help. Later Kay Street called and set up a meeting with Ms. Harris. Parry Donaldson, a salesman who had worked with Kay Street, also attended this meeting. Ms. Harris stated Kay Street explained that her license had been revoked because she had a couple of judgments against her and she had mishandled some money. Kay Street told Ms. Harris that she would be able to reapply for a license after more schooling. She wanted Ms. Harris to take over the office for two months until someone who had worked previously at Kay Street Realty could take the December, 1980 broker's exam. Ms. Harris stated she had just wanted to help the people who had been working there from losing presently listed real estate.
In exchange for her help, Kay Street and Ms. Harris agreed that Ms. Harris would receive ten (10) percent of commissions earned, Kay Street would receive forty (40) percent, and the individual salesperson would keep fifty (50) percent of the commission on each sale.
The complaint against Ms. Harris stemmed from a real estate transaction gone sour involving Parry Donaldson and a potential home buyer by the name of Eloise Burnside. Mrs. Burnside and her husband had looked at a home in Jackson County. Mrs. Burnside said she and her husband were told by Parry Donaldson that the house was about to be foreclosed upon but they could purchase it for the amount needed to bring it out of foreclosure, was approximately $2,600. The Burnsides met Parry Donaldson and the seller, Terry Marshall, at a bank November 10, 1980 and signed a contract. The contract lists a deposit of $2,500 received as earnest money towards purchase. The contract states that the purchaser would assume a loan in the amount of $31,500. The contract listed a commission earned of $500 payable by the owner at closing. However, the contract did not comply with Commission rules in several respects. Mrs. Burnside testified that instead of paying the $2,500 designated as earnest money at the contract signing the Burnsides paid only $900 by cashier's check made payable to Parry Donaldson. Two other payments were made later thereby aggregating a total deposit of $1,020. The contract had Parry Donaldson's *961 signature on the line designated for the signature of an additional seller. Donaldson testified this was strictly an accident because he was unfamiliar with the form. There is no signature acknowledging the receipt of the deposit money nor the name of Ms. Harris as broker or the name of Sheleese Realty Company.
The complaint against Donaldson alleged that he failed to turn the $1,020 over to his broker. Investigator Hardwick testified that Donaldson told him that he kept the $1,020 and did not turn it over to anyone at Sheleese Realty. Donaldson later testified that he did turn the money over to Kay Street. Donaldson later repaid the entire amount to the Burnsides after the Burnsides filed false pretense charges against him because they learned that no one at the mortgage company knew of the Burnsides' contract to assume the mortgage.
The Burnsides' contract was entered into without Jessica Harris' knowledge. For some reason apparently unrelated to Mrs. Burnsides' complaint, Investigator Hardwick met with Ms. Harris and the sales personnel on November 18, 1980 (eight days after the Burnsides signed their contract) for the purpose of auditing Sheleese Realty's escrow account. Hardwick testified that "[i]t was learned at that meeting, that the salesman in that office had received `earnest money' and had been taking listings, and had ... conducted other real estate business without informing Ms. Harris and she expressed surprise upon learning that at that time." The office was closed as a result of this meeting and Ms. Harris promptly turned over the agency license and the licenses of her salespersons to the Commission.
It is not clear from the record made before the Commission as to what happened to escrow money accepted by Donaldson and other salespersons. Ms. Harris had opened a company escrow account and told Kay Street and the company receptionist that they could make deposits of any earnest money the company took in. Ms. Harris was the only person who could sign checks on the account, but no money was ever deposited.
Ms. Harris said she did not check out Kay Street with the Real Estate Commission before entering into the agreement because she thought if any of Kay Street's indiscretions had been major the Commission would have said something. She did know that Kay Street had some personal judgments against her, but she did not inquire about them since they did not relate to the business. Commission member Harry Joachim stated that as a matter of public record, Kay Street was $50,000 short in her company escrow account at one time.
Ms. Harris thought the Sheleese Realty Co., named for Kay Street's daughter, had never really opened for business because no one was ever in the office when she stopped by. She learned the company was not financially stable when the telephones were cut off because the bill had never been paid. "The bank account was there to put money in, the deposit slips were there, there was everything there that ... that I could help them with." Ms. Harris said she realized she was responsible for the actions of her sales persons, but "these are grown people, and you expect them to be honest... . And if they're not honest with you, you can't be responsible."
The Commission issued its findings of facts and conclusions of law February 23, 1981, finding Ms. Harris violated Rule 6 of the Mississippi Real Estate Commission Rules and Regulations and Miss. Code Ann. § 73-35-21(m) (Supp. 1985). This appeal followed.

DISCUSSION OF LEGAL ISSUES

I.

Was the Commission's Decision Arbitrary, Capricious, Unreasonable and an Abuse of Discretion Not Supported by Substantial Evidence?
There appears to be no dispute concerning the standard of review. This Court in Eidt v. City of Natchez, 421 So.2d 1225, 1231-32 (Miss. 1982) stated:

*962 Recognizing the peculiar expertise of administrative agencies when acting within their proper sphere, we have consistently refused to overturn any administrative agency's finding based upon substantial evidence. Mississippi State Tax Commission v. Package Store, Inc., 208 So.2d 46 (Miss. 1968); Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959); Cobb Brothers Construction Company v. Gulf, M & O.R.R. Co., 213 Miss. 706, 57 So.2d 570 (1952); Mississippi Unemployment Compensation Commission v. Avent, 192 Miss. 85, 4 So.2d 296 (1941).
... .
Accordingly, the scope of judicial review of the findings and actions of an administrative agency is limited to the four aspects set forth in Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664 (Miss. 1969).
The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this state.
Id. at 665.
The decision "must be based upon substantial evidence appearing in the record." Eidt, 421 So.2d at 1232 (emphasis in original). In Mississippi Real Estate Commission v. Ryan, 248 So.2d 790 (Miss. 1971), this Court established the meaning of "substantial evidence." The Court in Ryan dealt with the Commission's appeal of a Pearl River County Circuit Court order overturning the revocation of Mrs. Ryan's broker's license.
In order to take or suspend the license of a real estate broker under a charge of bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings, the proof need not be beyond a reasonable doubt, (2 Am.Jur.2d Administrative Law section 3982, page 199 [1962], but the testimony must clearly establish the guilt of the respondent. Proof of surmise, conjecture, speculation or suspicion is not sufficient. 2 Am.Jur.2d Administrative Law § 393 (1962).
... .
The appellant contends that the administrative agency in the instant case had before it sufficient substantial evidence on which to base its order and that its decision was not arbitrary, capricious, unreasonable nor an abuse of discretion. We cannot agree with this contention because substantial evidence means more than a scintilla; it must do more than create a suspicion, especially where the proof must show bad faith. 2 Am.Jur.2d Administrative Law § 688, page 572 (1962).
248 So.2d at 793-94.
Also, in Ryan, this Court noted that the Commission's authority should be used judiciously.
The authority of the Real Estate Commission to revoke the license of a broker under Section 8920-11 Mississippi Code 1942 Annotated (1956) [now Miss. Code Ann. § 73-35-21 (Supp. 1985)] is a right given to the Commission to take from the licensee the right to do business and make a living in the practice of his profession. Such authority should be exercised with caution. See: Mississippi State Board of Dental Examiners v. Mandell, 198 Miss. 49, 21 So.2d 405 (1945); Mississippi Insurance Commission v. Savery, 204 So.2d 278 (Miss. 1967); 51 Am.Jur., 2d Licenses and Permits section 58, page 62 (1970).
248 So.2d at 793.
To us, there does not appear to be any question that the Commission's findings were supported by substantial evidence. From the hearing, the Commission knew that: (a) Jessica Harris had taken on the responsibility of being employing broker for Sheleese Realty; (b) she did not intend to devote her full energies to this endeavor *963 because of family health matters; (c) she made relatively infrequent visits to the office, such as it was, and apparently was content when she was told that no business was being transacted; (d) her basic management philosophy appeared to be "call if you need me," and she trusted her employees to do so; (e) Parry Donaldson and apparently other sales persons did transact business without informing Jessica Harris, and at least Donaldson failed to act properly in drawing up a contract for sale.
Ms. Harris contends that the evidence neither supports guilt nor the imposition of such severe punishment. As noted, there is substantial evidence that Ms. Harris did not exercise "strict" supervision of Parry Donaldson if the term "strict" supervision is reasonably free of ambiguity. We take Ms. Harris' complaint against the severity of the sanction as an invitation for this Court to separately evaluate the findings and the punishment. We decline the invitation. We note that other jurisdictions might find that an agency abused its discretion in imposing a penalty even where substantial evidence supports a finding of a violation. See Harris v. Alcoholic Bev., etc. Appeals Board, 62 Cal.2d 589, 595, 43 Cal. Rptr. 633, 637, 400 P.2d 745, 749 (1965); Matter of Pell v. Board of Education, 34 N.Y.2d 222, 238, 356 N.Y.S.2d 833, 841, 313 N.E.2d 321, 327 (1974).
However, our traditional standard of review, whether or not it arguably allows such a determination, does not obligate us to separately second guess an administrative agency's imposition of sanction. We take this position in recognition of the unique position administrative agencies hold. The agency charged with regulating certain activities knows best how to police its own. This seems especially true where an agency commission comprised of fellow practitioners, as is the Real Estate Commission, sits in judgment of one of its own. Miss. Code Ann. § 73-35-5 (Supp. 1985) requires each member of the Commission to have had the vocation of real estate broker for at least five years before appointment. The Commission is given "full power to refuse a license ... or to revoke or suspend a license" where the licensee violates any of the provisions contained in § 73-35-21 (Supp. 1985). We hold the Commission's decision was supported by substantial evidence, was not arbitrary or capricious, and was not beyond the power of the Commission. This being decided, we look no further.
Under her first assignment of error, Ms. Harris also argues that the Commission impermissibly seeks to impute to her the illegal acts of Parry Donaldson. Ms. Harris cites Davis v. Missouri Real Estate Commission, 211 S.W.2d 737 (Mo. Ct. App. 1948), Dittmeier v. Missouri Real Estate Commission, 237 S.W.2d 201 (Mo. Ct. App. 1951), and 2 Am.Jur. Brokers § 22 (1964) to support the proposition that respondeat superior is not applicable to impose a penalty or civil forfeiture without some showing of fault. There appear to be two points which argue against Ms. Harris' position. First, it appears the Commission did find fault to the extent Ms. Harris failed in her duty to supervise Parry Donaldson. Second, close scrutiny of the cases cited by Ms. Harris reveals that respondeat superior shall not apply "unless the statute imposing the penalty expresses a contrary intent... ." Vann v. Dist. of Columbia Board of Funeral Directors, 480 A.2d 688 (D.C.App. 1984) (citing Davis, 211 S.W.2d at 740). In Vann, the court held that a regulation also could provide the expression of contrary intent where the regulation did not violate due process. 480 A.2d at 693-94. We need not decide whether the regulation here meets Vann, for we find that the Commission properly found fault and held Ms. Harris responsible for her failure to supervise her salespersons.

II.

Was Jessica Harris denied due process?
Under this assignment of error, Ms. Harris makes basically two arguments: (1) she was denied the opportunity to cross-examine *964 witnesses and (2) she was not given notice of the proceedings against her.
To take the second issue first, it is clear Ms. Harris was served with a copy of the complaint. The record reflects she was served January 30, 1981. However, she argues she was not aware of the charges as it was necessary to have the charges explained. The complaint of the Commission aims predominantly at Parry Donaldson. The only allegations against Ms. Harris were as follows:
I.
That respondent Jessie M. Harris exercised little or no control and supervision of Respondent Donaldson and other salespersons working at the Sheleese Realty branch office at Highway 90 East, Ocean Springs, Mississippi, and that the Respondent Harris made infrequent visits to the above-mentioned branch office.
XI.
That the above conduct of Respondent Jessie M. Harris is in violation of Section 73-35-21(m), Mississippi Code of 1972, to-wit:
"... Any act or conduct ... which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing ..."
and Rule 6, Mississippi Real Estate Commission Rules and Regulations, to-wit:
"... It shall be the duty of the broker to instruct his salesmen in regard to the fundamentals of real estate practice and the ethics of the profession and to exercise strict supervision of their real estate acivities ..."
In Miller v. State Board of Pharmacy, 262 So.2d 188 (Miss. 1972), this Court reversed and vacated an order by the Board of Pharmacy revoking a license for failure to keep "adequate records." The Court was concerned that (1) no standards existed for determining what recordkeeping was adequate, and (2) even if such standards existed through interpretation of statutes, Miller was entitled to be told exactly what records were not kept adequately and in what respects they were inadequate. Miller, 262 So.2d at 190. The Court's concern was vagueness which prevented adequate preparation of a defense. The Court stated that definite, intelligible standards are required to give notice of what is required. The same may be true of the strict supervision rule of the Commission. However, as in Miller, this seems to us to be a question of vagueness. Most recently, this Court identified the required analysis when resolving a question of whether a regulation or statute is impermissibly vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution:
It is the foremost requisite of a legal system that there be general rules. Where those rules are not made clear and are not published and available to persons in the planning of their economic and social activities, the efficacy of the system is in substantial danger. Fuller, The Morality of Law, 46-51, 63-70 (rev. ed. 1969).
These notions have acquired constitutional status. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) states
"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process."  269 U.S. at 391, 46 S.Ct. at 127-28, 70 L.Ed. at 328.
An unconstitutionally vague statute or regulation is unenforceable. A.B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 242, 45 S.Ct. 295, 298, 69 L.Ed. 589, 594-95 (1925).
Most of the void for vagueness cases have arisen in the context of criminal prosecutions. See ABC Interstate Theatres, Inc. v. State, 325 So.2d 123, 125 (Miss. 1976) (obscenity statute overbroad). It is clear however, that the doctrine applies to civil statutes and to regulations. *965 See A.B. Small Co. v. American Sugar Refining Co., 267 U.S. at 237, 45 S.Ct. at 296, 69 L.Ed. at 592 (applied to civil statute); Hynes v. Mayor of Oradell, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243, 253 (1976) (applied to regulation). On the other hand, when the doctrine applies in the context of economic regulation its strictures are relaxed. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362, 371-372 (1982).
A rule or standard is not objectionable merely because it is stated in general terms and is not susceptible of precise application. Familiar examples of such general standards abound in our law, e.g., negligence, unconscionability, fraud. We doubt anyone would seriously argue today that these standards are unconstitutionally vague.
Transcontinental Gas Pipe v. State Oil and Gas Board, 457 So.2d 1298, 1323 (Miss. 1984) rev. on other grounds, 474 U.S. ___, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986). It is said that a statute (or in this case a regulation) should be upheld if the statute does not implicate constitutionally protected conduct or it is not "impermissibly vague in all of its applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982). This standard means that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." Id. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369.
Applying the vagueness analysis to this case does not provide comfort to Ms. Harris. The Commission found that Ms. Harris exercised "little or no control" over her sales personnel. Ms. Harris has no room to complain about any ambiguity in the term "strick supervision." Whatever strict supervision means, it means more than no supervision. The only evidence which would refute the Commission's finding seems to be Ms. Harris' testimony that she did go by the office at least twice a week, and she did explain that any contracts should not be made without her knowledge or presence. This does not call the Commission's finding into question.
Next, Ms. Harris argues that she was denied due process because she was not provided an opportunity to cross-examine the witnesses against her.
In Love v. Mississippi State Board of Veterinary Examiners, 230 Miss. 222, 230-21, 92 So.2d 463, 467 (1956) this Court stated:
Administrative agencies are, as a general rule, unrestricted by the technical or formal rules of procedure which govern trials before a court. However, in the exercise of judicial or quasi-judicial powers, the elementary and fundamental principles of a judicial inquiry should be observed.
"The inexorable safeguard which the due process clause assures in the exercise of a judicial or quasi-judicial power is that the trier of facts shall be an impartial tribunal legally constituted to determine the right involved, that no finding shall be made except upon due notice and opportunity to be heard, that the procedure at the hearing shall be consistent with the essentials of a fair trial; and that it shall be conducted in such a way that there shall be opportunity for a court to determine whether the applicable rules of law and procedure were observed." 42 Am.Jur. 451, Public Administrative Law, par. 16.
The right to a hearing in a case of this kind embraces not ony the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them.
Though the right to cross-examine witnesses may not have been specifically addressed in Love, Ms. Harris points out that Miss. Code Ann. § 73-35-23(a) (Supp. 1985) provides what could be interpreted to be a *966 statutory right to cross-examine adverse witnesses. That section provides in part:
The applicant or licensee or other violator shall have an opportunity to be heard thereon in person or by counsel, to offer testimony in his behalf and to examine witnesses appearing in connection with the complaint.
Ms. Harris was given the opportunity to present witnesses in her behalf. The Commission also argues that Ms. Harris was given an opportunity to cross-examine Commission witnesses. The Commission relies on statements in the record attributed to the Commission chairman asking if anyone had additional questions for witnesses before they stepped down. Ms. Harris maintains that these comments were directed at counsel for Parry Donaldson or the Commission, but in any event could not be interpreted as providing a layman, unfamiliar with legal procedure the opportunity to cross-examine witnesses. This argument ignores both the less stringent procedural requirements in administrative hearings and Ms. Harris' decision not to bring counsel to the hearing. No doubt had counsel for Ms. Harris been present he would not have been as timid as Ms. Harris in seeking to question witnesses. However, we do not agree that Ms. Harris' reluctance to assert her rights warrants reversal.

III.

Is a verified complaint required to be in the record under these circumstances?
Finally, Ms. Harris suggests that the action against her was invalid since the complaint was unverified.
Ms. Harris argues that Miss. Code Ann. § 73-35-21 (Supp. 1985) restricts the Commission in its proceedings. The pertinent part of that provision states:
The Commission may, upon its own motion and shall upon the verified complaint in writing, of any person, hold a hearing for the refusal of license, or the suspension or revocation of a license previously issued.
Also pertinent is Miss. Code Ann. § 73-35-23(a), which provides in part:
The Commission is hereby authorized and directed to take legal action against any violator of this chapter. Upon complaint initiated by the Commission or filed with it, the licensee or any other person charged with a violation of this chapter shall be given fifteen (15) days' notice of the hearing upon the charges filed, together with a copy of the complaint.
Appellant Ms. Harris argues § 73-35-21 should be read as requiring the Commission to only proceed where a complaint has been verified. She argues that the statute "requires that a complaint brought by any person shall be verified... ." We cannot agree with this argument. It states that the Commission shall hold a hearing when it receives a verified complaint. The Commission may also hold a hearing on its own motion and proceed by its own complaint. Ms. Harris counters that there is no evidence that the Commission proceeded by its own complaint in this case, and in fact the only evidence is that the complaint was that of Mrs. Burnside. Mrs. Burnside did identify the written complaint as hers, but the complaint is styled "Eloise Burnside and the Mississippi Real Estate Commission v. Jessie Harris" et al, and the complaint clearly states "Comes now the Mississippi Real Estate Commission and files this complaint." The fact that Mrs. Burnside identified the substance of the complaint as hers did not prohibit the Commission from proceeding upon its own motion.
Finally, we note that this case most assuredly would not be before us were it not for Kay Street's dealings. Though Kay Street was no longer subject to the jurisdiction of the Real Estate Commission, the Commission might do well to pass a regulation prohibiting licensed brokers from employing persons whose licenses have been revoked. A similar position has been *967 adopted by the Mississippi State Bar and the Commission might look there for guidance. Also, we note that though we leave the decision of what punishment to impose to the Commission, the mitigating factors and surrounding circumstances in this case make the penalty of revocation appear harsh. We suggest the Commission take this into account if Ms. Harris seeks reinstatement.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
GRIFFIN, J., not participating.