# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CC-00128-SCT

*MISSISSIPPI STATE BOARD OF PUBLIC ACCOUNTANCY ACTING AS BOARD AND TRIAL BOARD; ROY L. HORTON, JOSEPH F. CURRY, CATHY R. REED, MARGARET F. BUTLER, JOHN M. ROBINSON, MARVEL A. TURNER, SR., SAM J. LAROSA, JR., AND BEN B. SAYLE, SR., CERTIFIED PUBLIC ACCOUNTANTS, EACH IN THEIR INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS MEMBERS OF THE MISSISSIPPI STATE BOARD OF PUBLIC ACCOUNTANCY AND TRIAL BOARD*

*v.*

*STEPHEN W. GRAY, C.P.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/16/92 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JAMES F. STEEL |
| | PHIL CARTER |
| ATTORNEYS FOR APPELLEE: | C. MICHAEL ELLINGBURG |
| | REX D. HARVEY |
| | CHARLES L. BEARMAN |
| | DAVID M. MCMULLAN |
| | MARK HENRY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | CIRCUIT COURT ORDER REVERSED, AND DECISION BY AGENCY REINSTATED - 5/9/96 |
| MOTION FOR REHEARING FILED: | 5/23/96 |
| MANDATE ISSUED: | 6/27/96 |

**BEFORE DAN M. LEE, C.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a January 16, 1992, order of the Marion County Circuit Court reversing a decision of the Mississippi State Board of Public Accountancy to revoke the license of Stephen W. Gray, C.P.A., for accepting referral commissions contrary to the Board's rules and regulations. The Board contends that the circuit court failed to follow the appropriate standard of review in making its decision to reverse the agency decision. Finding that the circuit court improperly substituted its own judgment for that of the Board, we reverse and reinstate the Board's decision.

I.

¶2. As part of his accounting practice in Columbia, Mississippi, Stephen Gray found that many of his clients requested non-attest (non-audit) services, including business, tax and financial planning. Initially, he prepared financial planning packages and referred his clients to a securities broker. In June, 1987, Gray obtained a broker's license to serve as a registered representative of H.D. Vest Investment Securities, Inc., a Texas-based investment firm, so that he might handle his clients' securities transactions as well as their accounting business.

¶3. Gray claims to have limited his securities sales to clients for whom he conducted traditional non-attest accounting functions, and further, that he did not solicit securities business from clients for whom he performed only attest functions. He testified that he prominently displayed his broker's license in his office, and informed prospective investors that he would earn a commission on any securities purchases based on the commission structure set forth in the prospectuses he made available to them.

¶4. At the time Gray obtained his securities license, the Federal Trade Commission was involved in an effort to eliminate a ban by the American Institute of Certified Public Accountants ("AICPA") and the National Association of State Boards of Accountancy ("NASBA") against accountants' receipt of commissions from non-attest clients. However, as Gray admitted, the Mississippi State Board of Public Accountancy's Rules and Regulations prohibited the acceptance of commissions. The rule had been in effect "at least since 1973 and has been strictly and consistently enforced by the Board over the years."

¶5. Al Allred, C.P.A. and chief financial officer for Mississippi Medical Management, wrote a letter of complaint to the Board on November 13, 1990, asserting that he had discovered possible ethical violations when performing accounting services for one of Gray's former clients. Gray was charged with violating Board Regulation XI.A.2.d, which prohibits accountants from accepting commissions for referring clients to products or services of others. At the April 19, 1991 hearing, Gray did not deny that he earned a commission from his securities sales, but instead, challenged the legality of the rule's blanket prohibition against an accountant's negotiation of a private contract with his client. He asserted that the prohibition exceeded the statutory authority of the Board and did not serve to protect the public interest. The Board, acting under the aegis of Miss. Code Ann. §73-33-11 (1972), issued an order on May 21, 1991, revoking Gray's C.P.A. license and certificate.

¶6. On May 29, 1991, Gray filed his Complaint for Declaratory Judgment and Injunctive Relief in the United States District Court for the Southern District of Mississippi, alleging that the Board's actions violated the antitrust laws, Title 15 U.S.C. §1, et seq., and the First, Fifth and Fourteenth Amendments to the United States Constitution. On May 30, 1991, Gray further filed a Motion for a Preliminary Injunction to prevent the enforcement of the Board's order. At the hearing, the District Court found that there were issues of state law to resolve which might eliminate or modify Gray's federal law claims. The U.S. District Court has retained jurisdiction over the case pending the outcome of this action.

¶7. Gray filed his Notice of Appeal from the Board's order in the Marion County Circuit Court on June 20, 1991. Both parties submitted briefs and oral arguments to the lower court, which, on January 16, 1992, reversed the Board's order of revocation. Thereafter, the Board timely perfected this appeal.

## II.

¶8. The decision of an administrative agency shall not be disturbed unless unsupported by substantial evidence; arbitrary or capricious; beyond the agency's scope or powers; or violative of the constitutional or statutory rights of the aggrieved party. *Sprouse v. Mississippi Employment Security Commission*, 639 So. 2d 901, 902 (Miss. 1994); *Mississippi Commission on Environmental Quality v. Chickasaw County Board of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993); *Melody Manor Convalescent Center v. Mississippi State Department of Health*, 546 So. 2d 972, 974 (Miss. 1989). There is a rebuttable presumption in favor of the agency's decisions; the burden of proving to the contrary is on the challenging party. *Sprouse,* 639 So. 2d at 902; *Chickasaw County*, 621 So. 2d at 1216.

¶9. A reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case. *Sprouse,* 639 So. 2d at 902. *Chickasaw County,* 621 So. 2d at 1216; *Mississippi Public Service Commission v. Merchants Truck Line, Inc.,* 598 So. 2d 778, 782 (Miss. 1992). Chancery and circuit courts are held to the same standard as this Court when reviewing agency decisions. *Chickasaw County,* 621 So. 2d at 1215. When we find that the lower court has exceeded its authority in overturning an agency decision, we will reverse and reinstate the agency's decision. *Chickasaw County,* 621 So. 2d at 1215; *Merchants Truck Line,* 598 So. 2d at 782.

## III.

¶**10.** We agree with the Board's contention that the circuit court erroneously substituted its judgment for that of the administrative agency without any finding that its actions were arbitrary and capricious, beyond its power, unsupported by substantial evidence or in violation of Gray's constitutional rights.

¶11. Miss. Code Ann. §§73-33-1 through 19 established the Board of Public Accountancy to license and regulate the activity of certified public accountants. § 73-33-5 further provides that:

> The Mississippi State Board of Public Accountancy is hereby authorized with the following powers and duties:
>
> (f) To adopt and enforce such rules and regulations concerning certified public accountant examinee and licensee qualifications and practices as the board considers necessary to maintain the highest standard of proficiency in the profession of certified public accounting and for the protection of the public interest. The standards of practice of certified public accountants shall include generally accepted auditing and accounting standards as promulgated by the Mississippi State Board of Public Accountancy;

¶12. Among the rules promulgated by the Board, Regulation XI.A.2.d provides:

> A licensee shall not pay a commission to obtain a client, nor shall he accept a commission for a referral to a client of products or services of others. This rule shall not prohibit payments for the purchase of all, or a material part of, an accounting practice or retirement payments to individuals

formerly engaged in the practice of public accounting or payments to their heirs and estates.

The Mississippi Society of Certified Public Accountants has incorporated into its bylaws a Code of Professional Ethics, which contains a provision analogous to the Board's regulation:

> The acceptance by a member in public practice of a payment for the referral of products or services of others to a client is prohibited. Such action is considered to create a conflict of interest that results in a loss of objectivity and independence. A member shall not pay a commission to obtain a client nor shall he accept a commission for a referral to a client of products or services of others.

Several reasons are given for the necessity of this rule. First, fidelity to the public trust requires "total independence from the client at all times.**" *United States v. Arthur Young & Co.,* 465 U.S. 805, 818 (1984). Second, independence begets objectivity. *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983). Gray's dual role as a certified public accountant and a registered representative of the H.D. Vest firm creates a potential conflict of interest and raises questions of independence and objectivity with regard to whether his investment advice is motivated by the client's tax needs or the commissions those investments might generate.

¶13. The circuit court placed appears to have placed more emphasis on the national organizations' position than on the Board's regulations or the state organization's Code of Professional Responsibility, stating:

> While it is impressive that 46 states have prohibition [sic] against a C.P.A. receiving commissions, it is even more impressive to this court that the national association of all C.P.A.s specifically allows for the receipt of commissions.

¶14. While the circuit court judge recites the criteria for review articulated in *Sprouse*, no attempt was made to show that the Board's decision was arbitrary and capricious, beyond its powers, unsupported by substantial evidence or violative of Gray's rights. Rather, the opinion is peppered with the trial court's own opinion of the Board's rule. For example, the opinion states, "[s]o the fact that 46 states [are] doing it wrong does not make it right." Likewise, the circuit judge stated that, especially in the less-populated areas of the State, he did not see why this sort of activity should be discouraged or prohibited. The opinion further suggests, in an attempt at judicial rule-making, that any potential conflict of interest with a client could be avoided by requiring certified public accountants to file with the Board "some sort of ethics statement divulging any type of inter-relationship between that activity and his attest function with his clients."

¶15. The circuit court found that "the revocation of the license [is] too extreme a remedy for the facts and circumstances of this case." However, this Court has held that "[t]he agency charged with regulating certain activities knows best how to police its own." *Harris v. Mississippi Real Estate Commission,* 500 So. 2d 958, 963 (Miss. 1987). Where an administrative agency's decision is within its powers and neither arbitrary nor capricious, is supported by substantial evidence in the record and does not violate the rights of the aggrieved party, we have not hesitated to uphold the revocation or suspension of a professional license. *See Mississippi State Board of Psychological Examiners v. Hosford*, 508 So. 2d 1049 (Miss. 1987); *Harris*, 500 So.2d at 963; and *Smith v. Sullivan,* 419 So. 2d 184 (Miss. 1982).

IV.

¶16. The Mississippi State Board of Public Accountancy was acting within its regulatory power when it revoked Gray's license. There is substantial evidence in the record to support the decision, which was not

arbitrary or capricious or in violation of Gray's rights. In conclusion, we find that the circuit court improperly substituted its own judgment for that of the Board. Accordingly, we reverse the order of the circuit court and reinstate the Board's decision.

¶17. **REVERSE THE ORDER OF THE CIRCUIT COURT AND REINSTATE THE BOARD'S DECISION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**