KING, C.J.,
for the Court.
¶ 1. John P. Slay, proceeding pro se, was cited and fined by the Mississippi Department of Agriculture and Commerce for two violations of failing to submit swab samples for E. coli testing fora three week period. Slay appealed to the Circuit Court of Clarke County, which affirmed the fine. In his subsequent appeal to this Court, Slay asserts the following points of error which we quote verbatim:
I. Pray the Court finds the charges against me to be without merit .because they were supported by no substantial evidence and were arbitrary and capricious.
II. The appointment of James Meadows, with a 12th grade education, as Director of Meat Inspection, vio- ■ lates State code and puts the Mississippi Food Safety Program at risk.
III. The appointment of Larry Boyd, Assistant Director of Meat Inspection Division, as Hearing Officer to hear charges brought by his boss, James Meadows, Director of Meat Inspection makes a mockery of the judicial process.
IV. Is it proper for Honorable Judge Bailey to lie in his Order affirming the decision of the Mississippi Department of Agriculture and Commerce or does he get a Free pass.
*256 Additionally, The Mississippi Department of Agriculture and Commerce has filed a cross appeal in this matter asserting that Slay’s appeal should be dismissed because he did not file the record from the Department of Agriculture with the Circuit Clerk within thirty days of filing his notice of appeal. Due to the disposition of this matter this issue is moot, and finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. Slay owns and operates Slay’s Processing Plant, a small slaughter house located in Quitman, Mississippi, where he slaughters hogs. Slay operates under a license issued by the Mississippi Department of Agriculture and Commerce, hereinafter Department. The Department regulates the operations of state licensed slaughterhouses to ensure the safety of consumers through the Mississippi Meat Inspection Law codified in Mississippi Code Annotated Section 75-35-1-801. Mississippi Code Annotated Section 75-35-201 (Rev.2000) requires compliance and cooperation with the United States Department of Agriculture in developing and administering the state meat inspection laws. Pursuant to Mississippi Code Annotated Section 75-35-201, the Department adopted the Federal Meat Inspection Act which includes regulations that require testing slaughtered carcasses for the presence of the harmful bacteria, E. coli. If an animal is improperly slaughtered, E. coli can contaminate the meat and could cause death in those who ingest it. The federal regulations require that operators of small slaughterhouses, those with a volume of less than 20,000 slaughtered hogs per year, take an E. coli swab test of one slaughtered carcass a week, beginning with the first full week in June, until thirteen samples have been taken. The E. coli sampling regulations do not require that a custom hog, one meant for personal consumption only, be subjected to the E. coli testing, only inspected hogs are required to be tested.
¶ 3. The general procedure for taking an E. coli sample begins after a hog has been slaughtered and dressed, and the carcass placed in the cooler overnight. The sample is collected the next day by dragging a damp sponge across the jowl, belly, and ham of the chilled hog .carcass. The sponge saihple is placed in an insulated container, and sent to an approved laboratory to be analyzed for the presence of E. coli. If E. coli is present in a sample, it is reported as being so many colony forming units per square centimeter. For hogs, a sample that has over ten colonies per square centimeter is considered a positive sample. The laboratory then prepares a report giving the test results, and mails it and a new test kit to the plant operator. The E. coli testing regulations require that plant policies be re-evaluated and corrective measures be taken if three or more positive E. coli samples are received. If the sample gets hot before it is analyzed, it is considered contaminated because the heat will cause a sample that might already contain E. coli to have a much higher bacteria count.
¶ 4. The Director of the Meat Inspection Division of the Department, Jamés Meadows, began administrative proceedings against Slay charging him with failing to take E. coli swab tests for the weeks of October 8, 15, and 22, 2001. On January 31, 2002, Larry Boyd, Deputy Director of Meat Inspection, acting as hearing officer, conducted an evidentiary hearing. Boyd found Slay guilty of two violations, recommended that he be .fined $250 for each violation, and that his meat establishment license be suspended for a one week period for each violation.
¶ 5. On- February 4, 2002, Lester Spell, Commissioner of the Department, entered *257 an order affirming the recommendation of the hearing officer.
¶ 6. On February 7, 2002, Slay filed a notice of appeal to the Circuit Court of Clarke County. On December 30, 2002, the circuit judge affirmed the findings of the Commissioner. Aggrieved, Slay has perfected his appeal.
ISSUES AND ANALYSIS
I.
Pray the Court finds the charges against me to be without merit because they were supported by no substantial evidence and were arbitrary and capricious.
¶ 7. Slay contends that the decisions of the hearing officer and the circuit judge were arbitrary and .capricious because they were not supported by the evidence. Slay claims that the only evidence to support the finding of the agency and the circuit judge was an unverified, unsigned e-mail of a statistical report that was impeached by the Department’s “key witness,” Noel Hall. Slay also argues that state regulations were improperly preempted by federal regulations.
¶ 8. The standard of review for the findings and actions of an administrative agency is well established:
The reviewing court will entertain the appeal to determine whether or not the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party. These are the only grounds for overturning an agency action; otherwise, the agency’s determination must remain undisturbed.
Mississippi Comm’n on Environmental Quality v. Chickasaw County Board of Supervisors, 621 So.2d 1211, 1215 (Miss.1993). The decision of the Commissioner is only arbitrary and capricious if it is unsupported by any evidence. Hall v. Board of Trustees of State Institutions of Higher Learning, 712 So.2d 312, 324-25 (¶ 44) (Miss.1998). “A reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case.” Mississippi State Board of Accountancy v. Gray, 674 So.2d 1251, 1253 (Miss.1996).
¶ 9. Slay was charged with violating 9 C.F.R. § 310.25(a)(2)(v)(A), which requires plants with a volume of less than 20,000 slaughtered swine per year, take an E. coli swab test of one slaughtered carcass a week, beginning with the first full week in June, until thirteen samples have been taken. Slay contends that the federal regulations do not apply because his plant is a state-inspected plant only shipping intrastate.. Slay is in error. Pursuant to Mississippi Code Annotated Section 75-35-201(1), the Department was required to adopt standards that were at least equal to federal regulations. On August 13, 1998, the Department formally adopted, and filed with _ the Mississippi Secretary of State, the federal meat inspection rules and regulations, codified in 9 C.F.R § 310.25(a)(2)(v)(A), which include the requirement and procedure for E. coli testing. Slay contends that the Federal Meat Inspection Act was not lawfully adopted as the Commissioner did not hold public meetings prior to its adoption, as required by Mississippi Code Annotated Section 75-33-5 (Rev.2000).[1] Section 75- *258 33-5 only requires that public meetings be held “to discuss and publicize the provisions of this article,” which was adopted in 1960. The Meat, Meat-Food and Poultry Regulation and Inspection Law of 1960 does not require that a public meeting be held every time a regulation is adopted, or amended, and states in relevant part, “Hollowing the public meetings provided above, the commissioner shall promulgate rules and regulations for the orderly administration and enforcement of this article, not inconsistent with the provisions hereof, and shall spread same upon the minutes to be kept in his office.” Id. The federal regulations were adopted lawfully, and are applicable to Slay’s plant.
¶ 10. The E. coli testing program for the period during which Slay was charged began on June 1, 2001. The record indicates that Slay did not submit samples for E. coli testing for the first eight weeks of this period. In response to that failure, the Department suspended providing inspection services at Slay’s plant, but the suspension was held in abeyance conditioned upon Slay taking the samples in the future. Slay was not charged with any wrongdoing regarding this failure, and he subsequently began taking the required samples, and sending them to Standard Laboratories for analysis.
¶ 11. Although his argument is very unclear, Slay seems to argue that the evidence does not support a finding that he did not take the required E. coli tests, and that the only evidence to support any violation was an unverified e-mail sent to the United States Department of Agriculture (USDA) for statistical purposes.
¶ 12. On December 14, 2001, Slay was charged in a complaint, filed by James Meadows, with failing to submit samples for E. coli testing for the weeks October 8, 15, and 22, 2001. The kill reports submitted for these three weeks, by the field inspector to the Department, indicate that Slay slaughtered hogs all three of these weeks. Slay was required to submit samples for those weeks, as he had still not submitted the thirteen samples required by federal regulation. However, Standard *259 Laboratories’ records indicate that no samples were submitted by Slay for the weeks of October 8, 15, and 22. Slay’s own records indicated that there were no test results for the weeks of October 8, 15, and 22.
¶ 13. The Department’s field inspectors prepare a weekly “kill report” for each inspected plant. This report is used for statistical information to track the number and weight of animals being slaughtered in the state. The reports are prepared on-site, e-mailed to the Department’s main office in Jackson where they are printed, and then are sent to the USDA, Department of Agriculture Statistics. The documents, although available in e-mail form only and therefore unsigned, are admissible as government records prepared in the regular course of business pursuant to Mississippi Rules of-Evidence 803(8)[2] and 901(b)(7).[3] The records were authenticated at the Commission hearing by their custodian, and were admitted into evidence. We find no merit to Slay’s allegation that the records were impeached or improperly admitted.
¶ 14. ' Slay argues that he submitted a sample for the week of October 22, 2001. Slay did in fact send in a sample that week, but it was from a custom hog, not an inspected hog as required by'9 C.F.R. § 303.1(a)(2), and therefore was not a valid sample under the E. coli regulations, and does not count as one of his thirteen samples. A custom hog is defined in Mississippi Code Annotated Section 75-35-31(l)(a) (Rev.2000)[4] as a slaughter that *260 occurs when the owner of the animal brings it to be slaughtered, and the meat is used exclusively by the owner of the animal, members of his household, and his non-paying guests and employees. The field inspector was at Slay’s plant during the week of October 22, 2001, when Slay’s son admitted that he had slaughtered an inspected hog that day, but had not taken a sample for E. coli testing before grinding the meat up. Slay’s plant sent in a sample from one of the chilled hog carcasses, for the week of October 22, 2001. This sample was from a custom hog, and not from an inspected hog, and therefore did not comply with the regulations.
¶ 15. Slay also makes an argument regarding the confusion over a sample sent to Standard Laboratories. Standard’s technician admitted that he “threw out” one of Slay’s samples because it was too hot to be tested by the time it arrived at the lab. Standard Laboratories’ records indicate that the sample thrown out was taken sometime between November 20, 2001 and December 18, 2001, while Slay contends the sample is one that he is charged with having not taken. This argument is unpersuasive. Giving Slay the benefit of the doubt about this sample, the hearing officer dismissed one of the charges against Slay, and found him guilty on only two violations, instead of three. Although, Slay claims the post office lost another sample, and that he had a discussion with the Quitman postmaster regarding this, he offered no proof of this at the hearing, or in his brief to this Court, therefore, we find no merit to this uncorroborated allegation.
¶ 16. There is substantial evidence in the record that Slay violated 9 C.F.R. § 310.25(a)(2)(v)(A), as lawfully adopted by the Mississippi Department of Agriculture, by not submitting E. coli tests for the weeks of October 8, 15, 22, 2001. In an effort to respond to Slay’s claim that one of the samples was sent in but discarded by the lab, the hearing officer determined it appropriate to disregard the evidence as to one of the violations, and access a penalty to Slay on the two remaining violations. The findings of the hearing officer, Commissioner of the Department of Agriculture, and the Circuit Court of Clarke County are supported by substantial evidence, and were not arbitrary and capricious.
II.
The appointment of James Meadows, with a 12th grade education, as Director of Meat Inspection, violates State code and puts the Mississippi Food Safety Program at risk.
¶ 17. Slay offers no authority to support this position, while he makes reference to Mississippi Code Annotated Section 75-33-11 (Rev.2000),[5] it offers no *261 comfort to him on this issue. The Commissioner is given great latitude in the appointment of personnel pursuant to Mississippi Code Annotated Section 75-33-11. Accordingly, we find no merit to this issue.
III.
The appointment of Larry Boyd, Assistant Director of Meat Inspection Division, as Hearing Officer to hear charges brought by his boss, James Meadows, Director of Meat Inspection makes a mockery of the judicial process.
¶ 18. Slay claims that Larry Boyd, the hearing officer in his ease, had a conflict of interest because the allegations were brought by his superior.
¶ 19. In order for Slay to prevail on a conflict of interest claim it is necessary that he present evidence of a personal bias, financial interest arising from this fact, or evidence of misconduct. United Cement Co. v. Safe Air for the Env’t., Inc., 558 So.2d 840, 842-43 (Miss.1990). United Cement further stated:
[T]here is a presumption that the officers conducting the hearing and the members of the Board behave honestly and fairly in the conduct of the hearings and in the decision-making process. Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer’s part, this presumption is not overcome. The hearing officer might well be an employee of the permitting board or a member of the board itself.
Id. (internal citations omitted).
¶ 20. Slay’s sole evidence of a conflict of interest is that the allegations were filed by Boyd’s superior. This alone does not establish a conflict of interest. This Court must also note that Slay did not previously raise a conflict of interest claim. Having failed to raise this issue previously, it is procedurally barred. See Douglas v. Blackmon, 759 So.2d 1217, 1221 (¶ 13) (Miss.2000).
¶ 21. There is no merit to this assignment of error.
IV.
Is it proper for Honorable Judge Bailey to lie in his Order affirming the decision of the Mississippi Department of Agriculture and Commerce or does he get a Free pass.
¶ 22. Finally, Slay argues that the circuit judge misstated the various findings in his order. This Court has reviewed the record, including the order and finds this issue to be without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY IS AFFIRMED ON BOTH DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, P.J., AND LEE, J„ IRVING, MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.

. Miss.Code Ann. § 75-33-5. Public meetings; rules and regulations; records; amendments to regulations. From and after the effective date of this article, the commissioner *258 is hereby authorized and directed to hold not less than three (3) public meetings, one meeting in each supreme court district, and such other meetings as he may consider necessary, to discuss and publicize the provisions of this article and to obtain such information as may be possible to promulgate rules and regulations for the enforcement of this article. The commissioner shall publicize the date, hour and place of the meetings through the press and shall publish a notice of such meetings at least thirty (30) days prior thereto in at least one daily newspaper having a general circulation in the area of such meeting.
Following the public meetings provided above, the commissioner shall promulgate rules and regulations for the orderly administration and enforcement of this article, not inconsistent with the provisions hereof, and shall spread same upon the minutes to be kept in his office. Also, the commissioner shall prescribe and supply the necessary and proper forms to be used in carrying out the provisions hereof.
Provided, however, the commissioner shall not promulgate any rules and regulations which are inconsistent with the rules and regulations of the U.S. Department of Agriculture governing the businesses covered by this article.
The commissioner shall obtain and keep in his office a minute book which shall be plainly identified as a record of the things had and done in carrying out the administration of this article, and for the proper recordation of the rules and regulations promulgated hereunder. Every licensee hereunder shall be furnished a copy of such rules and regulations when a license is issued. No amendment to a rule or regulation containing a penalty for the violation thereof shall become effective in less than thirty (30) days from the date of such amendment, and the date of such amendment must be spread upon the minutes of the commission.

. M.R.E. 803(8): Hearsay Exceptions; Availability of Declarant Immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

. M.R.E. 901. Requirement of Authentication or Identification.
(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
(b) Illustrations. By way of illustration only, and not be way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
(7) Public Records or Reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or-data compilation, in any form, is from the public office where items of this nature are kept.

. Miss.Code Ann. § 75-35-31. Exemptions from inspection requirements; compliance with sanitary regulations; application of adulteration and misbranding provisions to products not required to be inspected.
(l).The provisions of .this article requiring inspection of the slaughter of animals and the preparation of the carcasses, parts thereof, meat and meat food products at establishments conducting such operations shall not (a) apply to the slaughtering by any person of animals of his own raising, and the preparation by him and transportation in intrastate commerce of the carcasses, parts thereof, meat and meat food products of such animals exclusively for use by him and members of his household and his nonpaying guests and employees; nor (b) to the custom slaughter by any person, firm, or corporation of cattle, sheep, swine, or goats, delivered by the owner thereof for such slaughter, and the preparation by such slaughterer and transportation in intrastate commerce of the carcasses, parts thereof, meat and meat food products *260 of such animals, exclusively for use, in the household of such owner, by him, and members of his household and his nonpaying guests and employees: provided, that such custom slaughterer does not engage in the business of buying or selling any carcasses, parts of carcasses, meat or meat food products of any cattle, sheep, swine, goats, or equines, capable of use as human food.

. Miss.Code Ann. § 75-33-11. Employees. The commissioner is hereby authorized and empowered to designate or assign any employee of the department of agriculture and commerce to perform and carry out the provisions of this article. Also, he is authorized to employ such other personnel as he may consider necessary to assist him in promulgating the rules and regulations authorized hereunder and employ such other personnel as he may consider necessary to assist him in promulgating the rules and regulations authorized hereunder and employ such inspectors as he may consider necessary for the faithful administration and enforcement of this article *261 and the rules and regulations promulgated hereunder.
The commissioner shall endeavor to appoint, designate and employ persons qualified in the respective job assignments for the enforcement of this article. Any employee may be dismissed at any time for failure to perform the duties required of him.