ISHEE, J.,
for the Court:
¶ 1. John F. Gussio Jr. and Gregory (Greg) Joseph Gussio (the Gussios), realtors with Gussio Realty Inc., appeal the temporary suspension of their real estate licenses by the Mississippi Real Estate Commission (MREC). The MREC found that the Gussios made substantial misrepresentations to Timothy Keen and Darla Davis by leading them to believe a home was available for sale when the home was under contract with another buyer. The MREC also found that the Gussios failed to cooperate with the investigation of this matter. The decision of the MREC was affirmed by the Madison County Circuit Court.
¶ 2. On appeal, the Gussios argue: (1) no cause of action exists because a contract *785 was not formed; (2) the MREC’s decision was not supported by substantial evidence; (3) they complied with the investigation; and (4) the MREC did not have jurisdiction over this matter. We find the MREC had jurisdiction, and its decision was supported by substantial evidence. Accordingly, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. Keen and his fiance, Davis (his wife at the time of the proceedings in circuit court), met with Becky Hathcock of Century 21, Moselle and Associates to search for a home in the Florence, Mississippi area. The couple decided to make an offer on a home located at 114 Carriage Lane in Florence. The property was listed by Lexus Homes Inc., with Greg as the builder/realtor. Hathcock contacted Greg, who informed her that the house was under contract. Keen and Davis continued their property search.
¶ 4. On March 29, 2010, Greg informed Hathcock that the existing contract on 114 Carriage Lane would expire the following day, and he asked if Keen and Davis were still interested in making an offer. Keen and Davis were interested, and after negotiating the price with Greg, Keen entered into a contract with Lexus Homes on April 2, 2010, for $156,500. Greg requested $500 earnest money, and Keen delivered the check for $500 to Hathcock. The closing was set for on or before April 28, 2010.
¶ 5. On April 5, 2010, Greg faxed Keen what Keen believed to be the final contract. In preparation for the closing, Keen paid $200 for loan processing and $300 for a home inspection. In order for the home to be inspected, the utilities had to be turned on, and Hathcock contacted Greg to arrange this. Keen made a punch list of items to be completed on the home and gave it to Hathcock.
¶ 6. On April 15, 2010, Davis drove by the property at 114 Carriage Lane and saw people moving into the home. She spoke to them and found out that they had a contract on the home and were closing that day. Davis informed Keen, who then contacted Hathcock. Hathcock attempted to call Greg, but he did not answer. However, she was able to communicate with him by text message that day. Greg sent Hathcock a text message asking her to send him a good faith estimate. He never mentioned that someone else had a contract on the home. The closing with the other buyer went through on April 15, 2010, with a purchase price of $150,750.
¶7. On April 16, 2010, Keen filed a complaint with the MREC. The MREC notified the Gussios and Hathcock of the complaint and asked them to submit responses and documentation. Hathcock provided the requested documentation. However, the Gussios asked for additional time to review the matter. On May 26, 2010, the MREC received a letter from Gussio Realty that simply stated: “This transaction did not go through Gussio Realty, and was not in MLS. Therfore [sic], please close this matter.” The letter was signed by John and Greg. Another letter was received that day from Greg denying that he entered into a contract with Keen. Still, no documentation was submitted. On July 6, 2010, John sent the MREC an incomplete copy of the contract between Lexus Homes and the purchaser of the Carriage Lane home. The MREC attempted to contact John at the telephone number he had provided, but it was not the correct number.
¶ 8. After a hearing, the MREC found that Greg had violated the rules governing real estate brokers by making substantial misrepresentations to Keen and Davis. Further, the MREC found that the Guss-ios’ failure to comply with the investigation *786 was “a serious violation of the relationship between the [MREC] and its licensees.”[1] The MREC then suspended the Gussios’ real estate licenses for sixty days, with the second thirty days to be held in abeyance. Following the suspension held in abeyance, the Gussios were ordered to complete four hours of continuing education in contract/license law in addition to the hours normally required for renewal of their licenses.
¶ 9. The Gussios appealed their suspension to the Madison County Circuit Court. The circuit court found substantial evidence to support the MREC’s decision, and affirmed. We likewise affirm.
STANDARD OF REVIEW
¶ 10. “Judicial review of an administrative decision is limited.” McFadden v. Miss. State Bd. of Med. Licensure, 735 So.2d 145, 151 (¶ 20) (Miss.1999). “[A]n agency’s decision will not be disturbed on appeal absent a finding that it ‘(1) was not supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.’ ” McDerment v. Miss. Real Estate Comm’n, 748 So.2d 114, 118 (¶ 9) (Miss.1999) (quoting Miss. State Tax Comm’n v. Mask, 667 So.2d 1313, 1314 (Miss.1995)).
DISCUSSION
I. Contract Formation
¶ 11. The Gussios go into great detail as to whether a contract was formed with Keen, arguing that without a valid contract, there can be no claim against them for misrepresentation. Specifically, the Gussios assert that no contract was formed because they did not agree to a handwritten contingency added by Hath-cock. We find this argument misses the point.
¶ 12. The MREC found, and we agree, that it was irrelevant whether a contract was formed. Rather, what is key is that substantial evidence existed to show that Greg represented that a contract had been formed. Keen proceeded under this belief when he paid his earnest money, obtained financing, and paid for a home inspection.
¶ 13. Mississippi Code Annotated section 73-35-21(l)(a) (Rev.2012) states:
(1) The commission may, upon its own motion[,] and shall[,J upon the verified complaint in writing of any person, hold a hearing for the refusal of license or for the suspension or revocation of a license previously issued, or for such other action as the commission deems appropriate. The commission shall have full power to refuse a license for cause or to revoke or suspend a license where it has been obtained by false or fraudulent representation, where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:
(a) Making any substantial misrepresentation in connection with a real estate transaction[.]
¶ 14. Nothing in section 73-35-21(l)(a) requires the formation of a contract; rather, it gives the MREC authority to suspend a broker’s license over “any substantial misrepresentation in connection with a real estate transaction.” (Emphasis added). There is no dispute that the interactions between the Gussios, Keen, Davis, and Hathcock were “in connection with a *787 real estate transaction.” Thus, regardless of whether a contract was formed, the MREC had the authority to find that the Gussios engaged in prohibited conduct. This issue is without merit.
II.Substantial Evidence
¶ 15. The Gussios next argue that Greg did not make any misrepresentations to Keen and Davis regarding the availability of the Carriage Lane home for sale. The Gussios cite to a provision in the contract that states: “Buyer to provide a proof of a firm commitment letter to seller within ten days and home to remain on market.” The Gussios argue that since no firm commitment letter was sent, Keen and Davis should have known that the home was still on the market and could be sold to another buyer. However, the issue here is that Greg continually represented to Keen and Davis that they could purchase the home, even on April 15, 2010— the day the home was sold to another buyer. This is shown by the text messages that were sent on April 15, 2010, between Hathcock and Greg:
Hathcock: Just faxed [yo]u repairs requested] for 114 [C]arriage[.] [L]et me know if [yo]u get it[.] I can also scan an email[.]
Greg: Can you send me a good faith estimated]
Hathcock: Faxed it and emailed it[.] [G]ive me a call[.]
¶ 16. The MREC clearly had adequate evidence to support its decision that Greg made substantial misrepresentations in his dealings with Keen and Davis. Greg accepted an earnest-money check from Keen and kept silent while Keen obtained financing and paid for a home inspection. Even on the day the home was sold, Greg continued to mislead Keen and Davis by asking for Hathcock to send a good faith estimate. This issue is without merit.
III. Compliance with the Investigation
¶ 17. The Gussios were found to be in violation of Rule IV.A.6. of the MREC’s Rules and Regulations, which states:
Any licensee who fails in a timely manner to respond to official Mississippi Real Estate Commission written communication or who fails or neglects to abide by Mississippi Real Estate Commission’s Rules and Regulations shall be deemed, prima facie, to be guilty of improper dealing.
¶ 18. The Gussios deny they violated this rule. They admit that they initially delayed the investigation: they first asked for additional time to review the matter; then they sent a letter asking for the matter to be closed. But they assert that they eventually complied and sent the requested documentation to the MREC on July 6, 2010. They argue that, after this date, no further requests were made. However, the MREC had attempted to request additional documentation because some of the pages were missing from the first documents. The Gussios then blame an outdated telephone listing for the MREC’s failure to reach them. This argument does not explain why the correct documents were never sent to the MREC. This issue is without merit.
IV. MREC’s Jurisdiction
¶ 19. The Gussios argue that the MREC lacked jurisdiction because Greg did not act as a real estate broker under Mississippi Code Annotated section 73-35-3(1) (Rev.2012).
¶ 20. Section 73-35-3(1) (Rev.2012) states that the term “real estate broker” includes:
[P]ersons ... who for a fee, commission or other valuable consideration, or who *788 with the intention or expectation of receiving or collecting the same, list, sell, purchase, exchange, rent, lease, manage or auction any real estate, or the improvements thereon, including options; or who negotiate or attempt to negotiate any such activity; or who advertise or hold themselves out as engaged in such activities; or who direct or assist in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction.
¶ 21. The Gussios assert that they did not expect Gussio Realty to receive a commission from Keen; thus, they did not come under the jurisdiction of the MREC. Rather, they argue that Greg, who built the home, was acting on his own behalf through his company, Lexus Homes. The Gussios admit that the Carriage Lane home was originally listed on the MLS through Gussio Realty. However, they argue that on February 4, 2010, they removed the home from the MLS, and it was not relisted. They assert that any offers made after this date were made to Greg, individually, and not to Gussio Realty. This assertion is without support as it is clear that Greg held himself out to be a real estate broker with Gussio Realty in this transaction. As evidence of this, the offer shows Gussio Realty as the listing agent, and Gussio Realty received a $5,000 commission when the home was sold to the other buyer.
¶ 22. Even if we were to find that Greg listed the home as an individual rather than a broker, he would still fall under the MREC’s jurisdiction. See Miss. Real Estate Comm’n v. Hennessee, 672 So.2d 1209, 1216-17 (Miss.1996) (finding that “a licensed realtor [is] subject to disciplinary actions by his state licensing commission for acts committed while selling property wholly owned by the realtor acting as the seller”). Likewise, John, as Greg’s responsible broker, was correctly held liable.
¶28. We find substantial evidence existed to support the MREC’s decision. Therefore, we affirm the decision of the Madison County Circuit Court affirming the MREC’s disciplinary action against the Gussios and Gussio Realty.
¶ 24. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. Although John was not directly involved in this transaction, he was Greg’s responsible broker, and under MREC’s Rules and Regulations IV.A. 1 and IV.A.2, a responsible broker is liable for his affiliate broker’s actions.