KING, JUSTICE,
DISSENTING:
¶ 45. Because this is a close case, as the majority admits, and because of the deferential standard of review we must afford the agency’s decision, I respectfully dissent.
¶ 46. As the majority notes,- “courts cannot enter the field of the administrative agency.” Harris v. Miss. Real Estate Comm’n, 500 So.2d 958, 962 (Miss. 1986); Maj. Op. ¶ 31, This Court will reverse an administrative agency decision only when 1) the decision is not supported by substantial evidence, 2) the decision is arbitrary and capricious, 3) the decision was beyond thé power of the agency, or 4) the decision violated a statutory or constitutional right of the complaining party. Id. The majority does not contend that the Mississippi Real Estate Commission’s (MREC) decision was arbitrary and capricious, was beyond its power to make, or violated any of McIntosh’s statutory or constitutional rights. Thus, the sole issue is whether the Commission’s decision was supported by ' substantial evidence! “Recognizing the peculiar expertise of administrative agencies when acting within their proper sphere, 'we have consistently refused to overturn any administrative agency’s finding based upon substantial evidence.” Id. (quoting Eidt v. City of Natchez, 421 So.2d 1225, 1231-32 (Miss. 1982)). “The agency charged with regulating certain activities knows how to police its own. This seems especially true where an agency commission comprised of fellow practitioners, as is the Real Estate Commission, sits in judgment of one of its own.” Harris, 500 So.2d at 963. The *222 MREC is both the trier of facts and the judge of witness credibility. Nelson v. Miss. State Bd. of Veterinary Med., 662 So.2d 1058, 1062-63 (Miss. 1995). Additionally, an agency’s interpretation of the statute under which it operates, such as the MREC’s interpretation of Section 73-35-21(l)(n), is entitled to great deference, “and must be upheld unless it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.” Queen City Nursing Ctr., Inc. v. Miss. State Dep’t of Health, 80 So.3d 73, 84 (Miss. 2011) (quoting Miss. State Dep’t of Health v. Baptist Mem’l Hosp.-Desoto, Inc., 984 So.2d 967, 981 (Miss. 2008)).
¶47. The majority attempts to claim that the Commission used some “ambiguous” definition of improper, but improper dealing has been explicitly defined .by our Court of Appeals, so licensees are on notice as to what constitutes improper dealing, and the meaning is clear and unambiguous. “Improper” is defined as “[ijncorrect, unsuitable or irregular” or “[fjraudulent or otherwise wrongful.” Improper, Black’s Law Dictionary (10th ed. 2014). “Dealing” is defined as “[tjhe business activities or relationships that someone is involved in” or “[tjhe activity of buying, selling, or doing business with people.” Dealing, Black’s Law Dictionary (10th ed. 2014). Thus, taking unfair financial advantage of someone is not. required to meet the definition of “improper dealing.” Such may be found simply with “incorrect” or “irregular” business activities.
¶48. Indeed, as noted, the Mississippi Court of Appeals has defined the term. In Farris v. Mississippi Real Estate Commission, the real estate agents argued that to find improper dealing, some sort of fraudulent or bad faith intent must exist and harm must be inflicted on one or more parties. Farris v. Miss. Real Estate Comm’n, 994 So.2d 229, 232 (Miss. Ct. App. 2008), cert. denied (November 6, 2008). In that case, the real estate brokers were using contracts, and forms with a Century 21 (Tennessee-based) logo for Mississippi Farris Realty, transactions, without the knowledge of Century 21. Id. at 231-32. The Court of Appeals cited the sixth edition of Black’s Law Dictionary and noted that “[ijmproper is defined as ‘[njot suitable, ‘unfit,’ ‘not suited to the character, time, and place,’ or ‘not in accordance with fact, truth, or right procedure.’ ” Id. at 233; see also Ryan v. Miss. Real Estate Comm’n, 2017 WL 412996, 217 So. 3d 725 (Miss. Ct. App. Jan. 31, 2017). While the court acknowledged that no evidence existed that the brokers intended to defraud or misrepresent facts, it found “substantial evidence in the record that they-engaged in improper dealing” because they used “Tennessee contracts, which did not comply with Mississippi law .... These are unsuitable practices that are not in accordance with correct procedure for real estate practice in Mississippi ..." Farris, 994 So.2d at 233. The court thus concluded that substantial evidence existed that the brokers’ actions constituted improper dealing. Id. In Palmer v. Mississippi Real Estate Commission, the Court of Appeals found substantial evidence of improper dealing even though the conduct only allegedly posed a risk to an investor in the secondary market. Palmer v. Miss. Real Estate Comm’n, 14 So.3d 67, 73 (Miss. Ct. App. 2008). In the sale, the seller provided the buyer with the down payment, which was not reflected in the' documents, thus, “[ajn investor in the secondary market would not be aware of the.details of the transaction and in particular since it would not be alerted that the down payment by the buyer had actually not originated from her funds.” Id. In such situations, where a buyer does not invest substantial equity, *223 the probability of default increases. Id. Thus, the real estate brokers’ actions in the case constituted improper dealing, because it “was a high-risk loan characterized as a low-risk loan by the actions of the seller, all unbeknownst, to HUD and the lender.” Id.; see also Gussio v. Miss. Real Estate Comm’n, 122 So.3d 783, 787 (Miss. Ct. App. 2013) (By MREC rule, a failure to respond to MREC written communications was deemed improper dealing; brokers failed to respond to written communications, and thus were guilty of improper dealing).
¶ 49. Turning to the facts at hand, even assuming retroactive application of the new statutory language, McIntosh did more than simply communicate about an appraiser. She actively tried to block Long from being chosen as the appraiser in multiple communications with multiple people, all while failing to put any opt-out clause or restriction in the contract. Coupled with the fact that 'after Long was chosen, she actively denied him, the assigned appraiser, entry into the property, attempted to have him removed as appraiser, and protested when he did gain entry to the property, it is certainly reasonable to conclude that McIntosh engaged in irregular or unsuitable business activities. While this Court, if we sat as the trier of fact and judge of witness credibility, may have made a different finding than that of the MREC, that is not the operative standard of review. The standard of review is one of deference, both to the MREC’s findings, and to its interpretation of “improper dealing.’’ Under the deferential standard of review, substantial evidence certainly exists that McIntosh engaged in improper dealing, or irregular business activities, with her attempted interference with the appraisal process. Indeed, the majority admits that this is a close case, .that a* contractual opt-out “should have been done here,”[3] and that' this exact conduct may constitute improper dealing “in the' future.” But the majority decides that due to some “ambiguity” that does not exist, as the term is clear and has been defined by the courts, it should both ignore the deferential standard of review and engage in fact-finding, and it therefore reverses the Commission.
1Í.50. This Court is not .the trier of fact or the judge, of witness credibility in an agency proceeding. I believe that the majority in this case engages in fact-finding and fails to give the agency decision the deference it is due under our standard of review. Because the decision of the MREC is .supported by substantial evidence, I would affirm it, and therefore I respectfully dissent.
WALLER, C.J., AND COLEMAN, J., JOIN THIS OPINION. ’

. The majority repeatedly asks how a licensee would know they could put an opt-out in a contract. This question is befuddling. Why would a licensee not know that? People ask .that all manner of unique provisions be placed into real estate contracts, an opt-out provision is no different.