# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CC-01207-COA

**CANDANCE BROWN**  **APPELLANT**

**v.**

**MISSISSIPPI REAL ESTATE COMMISSION**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2024 |
| TRIAL JUDGE: | HON. JESS H. DICKINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL CIRCUIT |
| ATTORNEY FOR APPELLANT: | EDNA FAYE JONES-STRINGER |
| ATTORNEYS FOR APPELLEE: | WILLIAM HOLCOMB HUSSEY CHARLES HENRY BEST III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 01/27/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. The Mississippi Real Estate Commission (Commission) declined to renew Candance Brown's real estate license and closed her license file after finding that Brown made untruthful and fraudulent representations to the Commission on her application. The Commission also found that Brown's felony convictions precluded renewal of her license. Brown appealed the Commission's decision to the Hinds County Circuit Court. The circuit court found that the Commission's decision was supported by substantial evidence and was not arbitrary or capricious, and the court accordingly affirmed the Commission's order.

¶2. Brown now appeals. After our review, we likewise find that the Commission's decision is supported by substantial evidence and is not arbitrary or capricious. We therefore

affirm.

**FACTS**

¶3.    Brown applied for a real estate agent license in 2016.  Relevant to this appeal, Brown's application contained a specific question asking if the applicant had "ever" been convicted of "any" criminal offense or entered a plea of guilty, and Brown responded, "No." The application also contained a sworn "Affidavit" section and included Brown's notarized signature, swearing, in relevant part, "that all of the information given in this application is true and correct to the best of his or her knowledge and belief."

¶4.    After Brown submitted her application, the Mississippi Legislature enacted Mississippi Code Annotated section 73-35-10 (Supp. 2016) to provide for a fingerprint-based criminal-history background investigation for all initial and renewal applicants for a real estate license in Mississippi.[1]  In relevant parts, the statute provides:

> (1)(a)    To qualify for a Mississippi real estate broker's license or a Mississippi resident license as a real estate salesperson, . . . an applicant must have successfully been cleared for licensure through an investigation *that shall consist of a determination that the applicant does not possess a background which calls into question public trust, as set forth below in subsection (2),* and verification that the prospective licensee is not guilty of or in violation of any statutory ground for denial of licensure as set forth in [s]ection 73-35-21.
>
> (b)    To assist the commission in conducting its licensure investigation, from and after July 1, 2016, all applicants for a Mississippi real estate broker's license, or a Mississippi resident license as a real estate salesperson, . . . and *all applicants for renewal of any real estate license shall undergo a fingerprint-based criminal history records check of the Mississippi central criminal database and the Federal Bureau of*

---

[1] The record reflects that Brown submitted her application on June 30, 2016, and the legislation went into effect on July 1, 2016.

2

*Investigation criminal history database. . . .*

Miss. Code Ann. § 73-35-10(1).

¶5.     Subsection (2)(a) of section 73-35-10 explains that "[t]he commission must ensure that applicants for real estate licenses do not possess a background that could call into question public trust." The statute accordingly prohibits the Commission from issuing a real estate license to "[a]n applicant found by the commission to possess a background which calls into question the applicant's ability to maintain public trust[.]" *Id*. § 73-35-10(2)(a). The statute also prohibits the Commission from issuing a real estate license to an applicant who "has been convicted of, or pled guilty or nolo contendere to, a felony in a domestic or foreign court . . . [a]t any time preceding the date of the application, if such felony involved an act of fraud, dishonesty or a breach of trust, or money laundering." *Id*. § 73-35-10(2)(b)(ii)(2).

¶6.     In accordance with section 73-35-10, Brown's fingerprints were obtained in August 2017 during the process of renewing her license. The background check revealed that Brown had more than one prior felony conviction. The Commission received records from the Federal Bureau of Investigation and Mississippi Department of Public Safety that showed Brown had been convicted of the felony crimes of uttering a forgery, credit card fraud, conspiracy to defraud, aggravated identity theft, unauthorized access device fraud, and scheme to commit wire fraud.

¶7.     After the Commission discovered that Brown (and other licensed real estate agents) had prior criminal convictions, the Commission sought an Attorney General's opinion

3

concerning, among other things, the due process that should be afforded to licensees facing revocation of a license due to a felony conviction. The Attorney General issued an opinion stating that licensees facing license revocation due to a felony conviction are entitled to proper notice of the charge and a hearing prior to revocation. Miss. Att'y Gen. Op., 2018-00413, 2018 WL 7078065, *Praytor* at *2 (Dec. 21, 2018). The opinion cited section 73-35-21, which gave the Commission the authority to "hold a hearing for the suspension or revocation of a license previously issued, or for such other action as the commission deems appropriate." Miss. Code Ann. § 73-35-21(1) (Supp. 2014). The opinion recognized that section 73-35-21(1) also grants the Commission

> full power to refuse a license for cause or to revoke or suspend a license where it has been obtained by false or fraudulent representation, or where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:
>
> . . . .
>
> (g) Entering a guilty plea or conviction in a court of competent jurisdiction of this state, or any other state or the United States of any felony[.]

*Id*.

¶8.     In accordance with the guidance from the Attorney General, on September 11, 2020, the Commission issued a formal notice to Brown of the Commission's administrative closure of her license file based on her guilty pleas and felony convictions, as well as her failure to notify the Commission of the convictions.[2]     The Commission cited section

---

[2] *See* Miss. Code Ann. § 73-35-10(3) (Rev. 2025) ("The commission shall provide prior written notification to any licensee whose license, once issued, is subject to be amended, suspended, revoked or not renewed. Said notice shall be delivered to the licensee whose license shall be affected and, if applicable, to their responsible broker, not less than

73-35-10(2)(b)(ii)(2), which states that the Commission shall not issue a real estate license if an applicant has ever been convicted of a felony involving an act of fraud, dishonesty, breach of trust, or money laundering. The Commission advised Brown that pursuant to section 73-35-21, the Commission may hold a hearing for the suspension or revocation of a license previously issued (or for such other action as the Commission deems appropriate) and that the Commission has full power to revoke a license that has been obtained by false or fraudulent representation, or where the licensee is adjudicated guilty by "[e]ntering a guilty plea or conviction in a court of competent jurisdiction . . . of any felony" or "[a]ny act or conduct, whether of the same or a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing. . . ." Miss. Code Ann. § 73-35-21(1)(g) & (n) (Supp. 2016).

¶9. The Commission also cited Commission Rules 3.1F and Rule 5.1B. Rule 3.1F states that "[a]ny licensee . . . who fails or neglects to abide by [the] Mississippi Real Estate Commission's Rules and Regulations shall be deemed, prima facie, to be guilty of improper dealing." 30 Miss. Admin. Code Pt. 1601, R. 3.1F. Rule 5.1B mandates that "[e]very licensee shall, within ten days, notify the Real Estate Commission of any adverse court decisions in which the licensee appeared as a defendant." 30 Miss. Admin. Code Pt. 1601, R. 5.1B.

¶10. The Commission informed Brown that she had the right to appear at the hearing and

five (5) business days prior to the effective date of the change. For purposes of this subsection, written notice shall be delivered to the email address for the licensee and broker on file with the commission."). Subsection (3) was added by amendment and not effective until July 1, 2025. *See* 2025 Miss. Laws ch. 365, §§ 1, 3 (S.B. 2423).

show cause that "the referenced information upon which the Commission will cause your file to be administratively closed is based upon mistake or some other error regarding the evidence of your conviction/guilty plea as set forth herein."

¶11. The Commission conducted its hearing on December 8, 2020, and April 27, 2021. Brown appeared at the hearing and was represented by counsel. The attorney for the Commission introduced evidence of Brown's March 2000 felony conviction in the Rankin County Circuit Court for the crimes of uttering a forgery and credit card fraud, as well as Brown's 2009 adjudication of guilt in the United States District Court for the Southern District of Mississippi for the felony crimes of conspiracy to defraud, aggravated identity theft, unauthorized access device fraud, and scheme to commit wire fraud.

¶12. At the hearing, Brown testified under oath and admitted she had approximately five or six felony convictions. Brown testified that she had not intended to deceive the Commission, and she explained that she interpreted the question on the application regarding felony convictions as asking whether she had committed a felony in the five to seven years prior to the submission of her application. When the Commission's counsel showed Brown the application, she agreed that the question actually asked whether she had *ever* been convicted of a felony and that the words "five or seven years" did not appear on the application. Counsel for the Commission also asked Brown why she failed to truthfully answer the question, "Has there been a judgment against you?" Brown responded that she thought "judgment" referred to a civil judgment, not a criminal judgment.

¶13. After the hearing, the Commission entered an order finding that Brown had

6

deliberately provided false information on her 2016 application for a license as a real estate agent. The Commission also found that Brown was not truthful on her renewal application and that she failed to voluntarily disclose her prior felony convictions. The Commission accordingly ruled that Brown's license would not be renewed and closed her license file.[3]

¶14. Brown appealed the Commission's decision to the Hinds County Circuit Court, which affirmed the Commission's order.

## STANDARD OF REVIEW

¶15. This Court's review of an administrative agency's order is limited to whether the Commission's decision is "(1) supported by substantial evidence, (2) arbitrary or capricious, (3) beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *McIntosh v. Miss. Real Est. Comm'n*, 233 So. 3d 214, 219 (¶31) (Miss. 2017). We afford great deference to the Commission's "construction of its own rules and regulations and the statutes under which it operates." *Ryan v. Miss. Real Est. Comm'n*, 217 So. 3d 725, 729 (¶12) (Miss. Ct. App. 2017).

## DISCUSSION

---

[3] Robert Praytor, then-executive director of the Commission, explained at the hearing that closure of a license file is effectively a revocation of a real estate license. Praytor testified that in the years prior to the hearing, the Commission became aware of bills introduced in the Mississippi Legislature that would allow a person who has had their license file closed, as opposed to revoked, an opportunity to obtain a license in the future. Praytor explained that based on this potential legislation, the Commission thought that it would be beneficial to the licensees to have their license file closed, rather than revoked, "so that if, in fact, some of this legislation does pass and it addresses individuals who have had licenses revoked, that by being closed, they would not automatically be forbidden forever from having a license." *See, e.g.*, Fresh Start Act of 2019, Miss. Code Ann. §§ 73-77-1 to -11 (Rev. 2025).

7

## I.     Whether Brown's constitutional issues are procedurally barred.

¶16.    Before discussing the merits of Brown's appeal, we first address a procedural matter. On appeal, Brown raises several constitutional arguments regarding sections 73-35-10 and 73-35-23.  Our review of the record shows that although Brown raised these constitutional arguments before the circuit court, she did not raise them before the Commission.[4]  "This Court has held that issues not raised before the Commission are deemed waived and may not be heard for the first time on appeal."  *Pepper v. City of Jackson*, 88 So. 3d 806, 809 (¶12) (Miss. Ct. App. 2012).

¶17.    Additionally, the record shows that Brown failed to provide notice to the Attorney General of her constitutional challenges at the trial level or on appeal.  Mississippi Rule of Civil Procedure 24(d) "requires that proper notice be given to the Attorney General when the constitutionality of a statute is challenged to afford him an opportunity to intervene and argue the question of constitutionality." *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 202 (¶9) (Miss. 1999) (internal quotation mark omitted).  Mississippi Rule of Appellate Procedure 44(a) "similarly requires service of any appellate brief challenging the validity of a statute on the Attorney General, the city attorney, or other chief legal officer of the governmental body involved." *Id*. (internal quotation mark omitted).

¶18.    In this case, Brown failed to comply with the notice requirements in Rule 24(d) and

---

[4] At the Commission hearing, Brown's counsel objected to the hearing being held before a panel of Commissioners, stating: "[M]y objection to this process, again, is the commission is the accuser, the trier of fact and the executioner. They are all three.  The statute itself is unconstitutional.  The procedure is unconstitutional." However, Brown did not raise any specific constitutional challenge.

Rule 44(a). Accordingly, we find that Brown's constitutional arguments on appeal are procedurally barred. *See Grehan v. Miss. Emp. Sec. Comm'n*, 918 So. 2d 774, 775-76 (¶¶6-7) (Miss. Ct. App. 2005); *see also Briggs v. Hughes*, 316 So. 3d 193, 199 (¶27) (Miss. 2021).

II. **Whether the circuit court judge erred in signing an order drafted by the Commission's counsel that allegedly lacked findings of fact and legal authority.**

¶19. Brown argues that the circuit court judge, sitting as the reviewing court of the Commission's order, erred by signing an order drafted by counsel for the Commission that failed to provide any clear finding of facts or legal authority addressing Brown's arguments.

¶20. In its appellate brief, the Commission acknowledges that the circuit court instructed the Commission's lawyer to prepare the final order and opinion affirming the Commission's order. This Court has held that it is not improper or unusual for a judge to request the winning party to draft an order. *Smith v. Baker*, 321 So. 3d 575, 579 (¶12) (Miss. Ct. App. 2021); *see also Kuhn v. High*, 302 So. 3d 630, 637-38 (¶¶20-21) (Miss. 2020) (holding that the trial judge did not err by "request[ing] that the winning party draft a proposed order" or by adopting much of the proposed order); *Watson Labs. Inc. v. State*, 241 So. 3d 573, 583 (¶17) (Miss. 2018) (holding that a trial judge's decision to adopt a party's proposed findings is not subject to any sort of "heightened scrutiny"); *Carlson v. Brabham*, 199 So. 3d 735, 739, 745 (¶¶8, 12, 43) (Miss. Ct. App. 2016) (affirming a trial judge's decision that "adopted [the defendant's] findings of fact and conclusions of law in toto").

¶21. Brown also argues that the circuit court failed to provide a basis for its ruling, findings

of fact, or legal analysis. Brown admits that the circuit court's order "dealt with the substantial evidence issues," but she claims that for her remaining issues the order contained conclusory statements without any legal analysis to support its ruling. In support of her argument, Brown cites Mississippi Rule of Appellate Procedure 14, which she submits "specifically addresses the necessity of the [c]ourt's responsibilities to issue finding of facts during an appeal that are reinforced by 'reasoned judicial decisions.'" However, we find that Brown's reliance on Rule 14 is misplaced. Rule 14 authorizes the appellate court "to return a case to a trial court for findings of fact that we find necessary for disposition." *Brown v. Bond*, 811 So. 2d 238, 240 (¶12) (Miss. Ct. App. 2000).

¶22. Additionally, although Brown does not specifically state which of her arguments lack legal analysis, we assume that she is referring to her constitutional arguments. As discussed, Brown failed to raise these arguments before the Commission and also failed to provide the required notice to the Attorney General. We therefore find that the circuit court did not err in declining to address these arguments.

¶23. After reviewing the circuit court's order, we find no merit to Brown's argument that the order lacks findings of fact or legal analysis.

### III. Whether section 73-35-21 grants the Commission authority to administratively close Brown's real estate file.

¶24. Brown next argues that the Commission's reliance on section 73-35-21 for its authority to close Brown's real estate file is misplaced. Brown asserts that subsection 73-35-21(1)(n) "makes it plain" that the statute only applies to a licensee whose actions are

subsequent to receiving their license.[5]

¶25.    Section 73-35-21(1) allows the Commission to "hold a hearing . . . for the suspension or revocation of a license previously issued, *or for such other action as the Commission deems appropriate.*"[6] (Emphasis added). *See also McIntosh*, 233 So. 3d at 219 (¶32) (recognizing that section 73-35-21 gives the Commission the authority to revoke or suspend the license of a real estate salesperson or broker). The statute grants the Commission "full power to refuse a license for cause or to revoke or suspend a license *where it has been obtained by false or fraudulent representation*[.]" Miss. Code Ann. § 73-35-21(1) (emphasis added). Contrary to Brown's argument, this language confirms that a license can be revoked based on a licensee's actions prior to receiving their license.

¶26.    Section 73-35-21(1) also grants the Commission the "full power" to revoke or suspend a license "where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of: . . . (g) [e]ntering a guilty plea or conviction in a court of competent jurisdiction of this state, or any other state or the United States of any

_____

[5] Brown also submits that the Commission's Disciplinary Action Matrix provides a scope of possible sanctions and limits the authority provided in section 73-35-21. *See* Miss. Real Est. Comm'n, MREC Disciplinary Action Matrix (July 2021), https://www.mrec.ms.gov/wp-content/uploads/2022/10/MRECDisciplinaryActionMatrix -2021.pdf. The purpose of the Matrix is to "provide[] guidance to assist the MREC Commissioners, the Investigative Staff and the MREC Legal Counsel in enforcement cases." *Id*. We agree with Brown's statement that the Matrix provides possible sanctions. However, Brown has provided no citations or legal authority for her claim that the Matrix limits the authority provided to the Commission by section 73-35-21. Upon reviewing the Matrix, we find no language to support Brown's claim that it limits the Commission's authority provided by section 73-35-21.

[6] As stated, the Commission chose to close Brown's license file, which Praytor explained is effectively a revocation.

11

felony"; "(m) [f]ailing to successfully pass the commission's background investigation for licensure or renewal as provided in Section 73-35-10; or (n) Any act or conduct, . . . which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing. . . ."  Miss. Code Ann. § 73-35-21(1)(g), (m) & (n).

¶27.    After our review, we find that under section 73-35-21(1), the Commission possessed the authority to decline to renew Brown's real estate license and to close her license file.

> ### IV.    Whether the Commission's decision to close Brown's file was arbitrary and capricious.

¶28.    Finally, Brown argues that the Commission's decision to close Brown's file was arbitrary and capricious based on the doctrine of estoppel.

¶29.    The doctrine of equitable estoppel "is based on public policy, fair dealing, good faith and justice" and "prevents a party from denying any material fact, induced by his or her words or conduct, upon which another person relied and changed his or her position and would suffer injury if the denial or contrary assertion was allowed."  *Siders v. Zickler*, 312 So. 3d 1224, 1231 (¶25) (Miss. Ct. App. 2021) (quoting *Swartzfager v. Saul*, 213 So. 3d 55, 65 (¶27) (Miss. 2017)).  "To invoke the doctrine of equitable estoppel, [Brown] must show (1) that [s]he believed and relied on some representation by [the Commission]; (2) that changed [her] position as a result; and (3) that [s]he suffered some detriment or prejudice because [s]he changed [her] position."  *Id*. at 1232 (¶27).

¶30.    At Brown's hearing before the Commission, Robert Praytor, the executive director of the Commission at the time, explained the reason for the delay between the discovery of Brown's felony convictions and the hearing.  As stated, the record shows that Brown applied

for her real estate license the day before section 73-35-10 went into effect. When Brown renewed her license a year later, the background check revealed her felony convictions. Praytor testified that as a result of the implementation of section 73-35-10, the Commission received flagged background checks on numerous real estate licenses, including Brown's license. As a result, the Commission requested an opinion from the Attorney General's office concerning, among other things, the due process that should be afforded to licensees facing revocation of a license due to a felony conviction. Praytor acknowledged that in the interim the Commission renewed Brown's license.

¶31. As stated above, the Attorney General issued its opinion in December 2018. Praytor testified that approximately a month later, the Commission received an email from the Attorney General's office informing the Commission that the office was "taking a second look" at its December 2018 opinion and advised the Commission not to take any "adverse action against any licensee pending this review." Praytor testified that on June 6, 2019, the Commission received an email from the Attorney General's office clarifying its December 2018 opinion. In September 2020, the Commission sent Brown (and the other licensees whose background checks revealed felony convictions) a formal notice to Brown of the Commission's administrative closure of her license file.

¶32. Brown asserts that the Commission's delay in addressing Brown's false representation on her application, and the subsequent renewal of her license in the interim, caused her to rely on the Commission's lack of action to her detriment. Brown explains that in the approximately three years between the Commission's discovery of her felony convictions and

13

the show cause hearing, she "had invested a great deal of time, money and energy in establishing a very lucrative career in the real estate industry." Brown argues that the Commission should therefore be estopped from taking any action against Brown.

¶33. We find that Brown's equitable estoppel argument fails. Brown failed to show that the Commission represented to her that it would not take action on her flagged background check and fraudulent representations on her license. Brown also failed to show that she changed her position as a result of any representation by the Commission and that she suffered some detriment or prejudice as a result of changing her position.

¶34. As stated, this Court will not disturb an administrative agency's decision on appeal unless the decision "(1) was not supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *Farris v. Miss. Real Est. Comm'n*, 994 So. 2d 229, 232 (¶7) (Miss. Ct. App. 2008). After carefully examining the evidence presented at the hearing, we find that the Commission had sufficient credible evidence upon which to base its decision. *See Little v. City of Jackson*, 375 So. 2d 1031, 1036 (Miss. 1979).

## CONCLUSION

¶35. We find there is substantial evidence that Brown provided false information on her 2016 application for a license as a real estate agent, that Brown was not truthful on her renewal application, and that she failed to voluntarily disclose her prior felony convictions. We therefore affirm the judgment of the circuit court affirming the order of the Commission.

¶36. **AFFIRMED.**

**BARNES, C.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**